Frank PERPICH, Plaintiff,

v.

CLEVELAND CLIFFS IRON
COMPANY, et al.,
Defendants.

No. 94–CV–73386–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 9, 1996.

Leonard C. Jaques, The Jaques Admiralty
Law Firm, P.C., Detroit, MI.

Julia R. Brouhard, David G. Davies, Ray, Robinson, Carle, Davies & Snyder, Cleveland, OH.

Phillip B. Maxwell, Hackett & Maxwell, Pontiac, MI.

Paul R. Van Tol, Martin, Bacon & Martin, Mt. Clemens, MI.

Donald B. Miller, Butzel, Long, Detroit, MI.

John D. Golden, Popham, Haik, Miami, FL.

R. Patrick Baughman, Baughman & Associates, Cleveland, OH.

Reynolds A. Brander, Cholette, Perkins, Grand Rapids, MI.

Peter B. Worden, Garan, Lucow, Detroit, MI.

William G. Jamieson, Morrison, Mahoney, Southfield, MI.

John G. Bacon, Martin, Bacon & Martin, Mt. Clemens, MI.

Thomas A. Marcucci, Marcucci Associates, Troy, MI.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY JUDGE

ROSEN, District Judge.

### I. INTRODUCTION

This Jones Act personal injury action is presently before the Court on Plaintiff's "Motion to Disqualify Judge Pursuant to 28 U.S.C. § 455". Plaintiff seeks to disqualify this Court based upon a November 15, 1995 disclosure to counsel of the Court's former participation in his family's limited partnership which owned stock in General Electric Company ("GE") and Westinghouse Corpora-

tion, two of the defendants in this case.[1] The November 15, 1995 letter to counsel stated:

I have recently discovered that a family investment entity in which I was a limited partner has owned stock in General Electric Company and Westinghouse Corporation, which are parties to the above-referenced pending action. Prior to this discovery, I had no knowledge that the family limited partnership owned this stock. Several weeks ago, I divested myself of the limited partnership interest, and therefore, no longer have any interest in those stocks. I note from a review of the docket sheet that, thus far, I have rendered no substantive opinions or orders in this case.

I have reviewed the pertinent statutes and law concerning disqualification and believe there is no requirement that I recuse myself in this case as I now have no financial interest and have rendered no substantive opinions. However, out of caution and prudence, I believe it is appropriate to bring this matter to your attention for whatever action, if any, you may deem necessary.

The Court has reviewed Plaintiff's Motion, and initial and supplemental supporting briefs, as well as the brief in response filed by Defendant General Electric Company, and has determined that no oral argument is necessary. Therefore, pursuant to Eastern District of Michigan Local Rule LR 7.1(e)(2), Plaintiff's Motion will be decided "on the briefs".

### II. DISCUSSION

Disqualification of federal judges is governed by 28 U.S.C. § 455, which provides, in pertinent part:

**1.** The limited partnership owned approximately 200 shares of Westinghouse and 400 shares of GE stock, although 200 shares of GE were sold in January 1994, before this case was assigned to this Court. The Court neither had nor has any role whatsoever in managing, or even making decisions about, the assets of the limited partnership. The Court only discovered that the limited partnership owned this stock by happenstance when, in a conversation with its father, was told that the limited partnership owned stock. Previously, in preparing its annual disclosure reports,

the only limited partnership assets reported to the Court, and the only assets which the Court, in turn, disclosed, were mutual funds and bonds. Immediately upon learning of the ownership of these stocks, the Court sought and received a list of the stocks and immediately moved to divest itself of its interest in the limited partnership. This was accomplished in October of 1995. (However, it should be noted that, although the Court did not know this at that time, the limited partnership had sold all of its Westinghouse stock four months earlier, in June 1995.)

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

\* \* \* \* \* \*

(4) *He knows that he,* individually or as a fiduciary, ... *has a financial interest ... in a party to the proceeding,* or any other interest that could be substantially affected by the outcome of the proceeding.

(5) He or his spouse, or *a person within the third degree of relationship* to either of them, or the spouse of such person:

\* \* \* \* \* \*

(iii) *Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding*[.]

\* \* \* \* \* \*

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

\* \* \* \* \* \*

(2) the degree of relationship is calculated according to the civil law system;

\* \* \* \* \* \*

(4) *"financial interest" means ownership of a legal or equitable interest, however small,* or a relationship as a director, adviser, or other active participant in the affairs of a party....

\* \* \* \* \* \*

(e) No justice, judge or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure

on the record of the basis for disqualification.

(f) *Notwithstanding the preceding provisions of this section, if any ... judge ... to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she ... has a financial interest in a party* (other than an interest that could be substantially affected by the outcome), *disqualification is not required if the ... judge ... divests himself or herself of the interest* that provides the grounds for disqualification.

28 U.S.C. § 455 (emphasis added).

■ Disqualification motions are matters committed to the sound discretion of the assigned district judge. *In re M. Ibrahim Khan, P.S.C.,* 751 F.2d 162, 165 (6th Cir. 1984); *Kelley v. Metropolitan County Board of Education,* 479 F.2d 810, 811 (6th Cir. 1973).[2]

Plaintiff's principal disqualification argument is predicated on subsections (b)(4) (financial interest of the judge) and (b)(5) (known interest of family members) of Section 455. Secondarily, Plaintiff relies upon the "catch-all" general standard in subsection (a) of the statute which provides for disqualification in a proceeding in which a judge's "impartiality might reasonably be questioned."

*FINANCIAL INTEREST IN A PARTY*

■ Plaintiff maintains that disqualification is mandated under § 455(b)(4) because the Court disclosed in November 1995 that it had just discovered that a family limited partnership (in which it was a limited partner) had owned some stock in General Electric Company and Westinghouse Corporation, two of the defendants in this case. Although Plaintiff acknowledges that the Court advised counsel for the parties that it had divested itself of the limited partner-

---

**2.** The Sixth Circuit has expressly rejected the argument that the assigned judge should be required to transfer a disqualification motion to a different judge for decision rather than deciding the motion himself. *See United States v. Hatchett,* 978 F.2d 1259, 1992 WL 296865, 1992 U.S.App. LEXIS 27169 (6th Cir.1992) (full text available on LEXIS). *See also, Parker v. Sill,* 989 F.2d 500, 1993 WL 87432, 1993 U.S.App. LEXIS 6922 (6th Cir.1993) (full text available on LEXIS).

ship interest "several weeks" earlier, Plaintiff nonetheless argues for disqualification because the Court did have a "financial interest" through the family limited partnership in Defendants GE and Westinghouse when the case was assigned to it in February 1995. Plaintiff asserts that he has "grave concerns" about the Court's impartiality since he does not know from the facts disclosed by the judge in November 1995 "the exact date he divested himself of any interest in the limited partnership, the number of shares [of the defendants' stock] the limited partnership owned and continues to own, the number of investors in the limited partnership, and the nature of the relationship the remaining partners share with Judge Rosen." [Plaintiff's initial brief, p. 3.]

As indicated in the November 15, 1995 correspondence to counsel, the Court no longer has any interest in the family limited partnership or the GE or Westinghouse stocks. Indeed, even the family limited partnership no longer has an interest in the stock of either company. As noted *supra*, the Westinghouse stock was sold in June 1995, and the GE stock was sold in February 1996. See discussion below.

An examination of the docket of this case indicates the following regarding this 20–month old case. Plaintiff filed his Complaint against five shipowner-employers and six non-employer manufacturers of ship engines or component parts on August 29, 1994. The case was originally assigned to U.S. District Judge Bernard Friedman. The case remained with Judge Friedman for five months, until February 2, 1995, when Judge Friedman recused himself. The case was then reassigned to this Court. From February through November 1995, the parties engaged in discovery.[3] The docket, however, reveals that discovery disputes were minimal, and in fact, the Court entered only four orders in the case as of November 1995, none of which were substantive.

On February 23, 1995 the Court entered a Scheduling Order setting the deadlines for discovery, dispositive motions, and the exchange of witness lists, and setting the dates for the final pretrial conference and trial. On June 13, 1995, the Court entered an Order of Reference, referring the defendants' motion to compel plaintiff's medical authorizations to Magistrate Judge Virginia M. Morgan for hearing and determination. (Magistrate Judge Morgan subsequently ruled on that motion on July 7, 1995.) A second Order of Reference was entered by the Court on August 16, 1995 referring another discovery motion to Magistrate Judge Morgan for resolution. The parties, however, resolved that discovery dispute extra-judicially, without the Magistrate Judge's intervention. The last Order entered by the Court was an Order entered on November 9, 1995 granting the motion of one of the attorneys in this case for leave to appear *pro hac vice*. Thus, it is clear that the Court made no substantive rulings on any material issue in this case and has taken no action whatsoever with respect to this matter since the filing of Plaintiff's disqualification motion.

In light of the foregoing procedural history, the Court finds that the circumstances concerning its discovery and subsequent divestment of its interest in the family limited partnership are substantially similar to the facts presented in *Union Carbide Corp. v. U.S. Cutting Service, Inc.,* 782 F.2d 710 (7th Cir.1986). That case involved a class action lawsuit filed on behalf of buyers of oxygen, nitrogen and argon. Two years after the complaint was filed, the federal district judge assigned to the case married a man whose self-managed retirement account happened to contain approximately $100,000 worth of IBM and Kodak stock. The judge had no reason to think that her marriage would have any effect on the propriety of her continuing to preside over the case since neither IBM nor Kodak were named plaintiffs, nor would it have seemed likely to person without a technical background who would not know that liquid nitrogen is used by both companies in their technical processes that either company would be a member of the plaintiff

---

3. Upon the close of discovery, the parties filed motions for summary judgment which were fully briefed as of November 1995. The Court was in the process of scheduling a hearing on these motions when Plaintiff filed his disqualification motion.

class since, at the time of the judge's marriage, there was no list of class members.

In May 1984 and 1985, the judge filed her required financial disclosure statements, disclosing her husband's stock interests. In July 1985, Union Carbide moved for the recusal of the judge based on § 455(b)(4), pointing out that IBM and Kodak had in fact bought industrial gases from the defendants during the period covered in the complaint. The judge immediately ceased ruling on any motions in the case while the parties briefed the disqualification issue. All other motions in the case were referred to a magistrate or another judge for resolution. After the issue was briefed, the judge determined that she could properly preside over the case if her husband sold the IBM and Kodak stock. After he did so, she resumed control over the action.

Union Carbide appealed the district judge's refusal to recuse herself arguing that the sale of the stock did not cure the mandatory disqualification called for under section 455(b). The Seventh Circuit rejected Union Carbide's argument. The appellate court explained:

> When Judge Getzendanner discovered in July 1985 that she had a financial interest in a "party", she immediately suspended her involvement in the case. Although the case was not formally reassigned to another judge, any matters requiring a judicial ruling were referred to other judges; it was as if she had recused herself. Then however her husband sold the stock and she resumed control of the case. It was as if she had been reassigned to it. And when reassigned she no longer had a financial interest in it. Since the statute forbids only the knowing possession of a financial interest, since Judge Getzendanner relinquished control of the case as soon as she found out about the financial interest, and since she did not resume control until the financial interest was eliminated, at no time was she in literal violation of the statute.

> We must of course consider the purpose as well as the bare words of the statute. But the purpose as we have said is just to make sure that judges do not sit in cases in which they have a financial interest, however small. Judge Getzendanner has no financial interest in this case. If she were to rule in favor of the plaintiffs it could not put a nickel in her pocket, because neither she nor her husband own securities of any member of the plaintiff class. Before she discovered she had a financial interest, she could have had no incentive to favor the plaintiffs; when she knew she had such an interest, she made no rulings in the case; now, when she has no interest, she cannot enrich herself by favoring the plaintiffs. The statutory purpose would not be served by forcing her to recuse herself.

782 F.2d at 714.

Just as was the case with Judge Getzendanner, this Court no longer has any financial interest in the case. It has had no financial interest in the stock of either company since, at the latest, October 31, 1995 when it severed its affiliation with the family limited partnership. Further, during the early part of the pendency of this case after its transfer to this Court's docket, the Court was unaware of the limited partnership's ownership of this stock, and once it learned of this interest (as well as of its interest in many other stocks), it moved to divest itself of its limited partnership interest. Moreover, even during the period before the Court divested itself of its partnership interest, the Court only entered a Scheduling Order. Other motions filed in that time frame were referred to a magistrate judge for resolution.

Notwithstanding that this Court, personally, did not enter any substantive orders during the nearly two-year pendency of this action, the parties and their counsel, as well as other judicial officers of the Eastern District have expended a substantial amount of time on this case, and the matter is ready for disposition, either by way of a summary judgment decision or trial.

Subsection (f) of § 455 provides:

(f) Notwithstanding the preceding [disqualification] provisions of this section, if any justice, judge, magistrate or bankruptcy judge to whom a matter has been as-

signed would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she ... has a financial interest in a party (other than an interest that could be substantially affected by the outcome), *disqualification is not required if the justice, judge, magistrate, bankruptcy judge, or his spouse, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.*

28 U.S.C. § 455.

Plaintiff·argues that no "substantial judicial time" has been spent because the Court has not entered any substantive orders in the case. Plaintiff's narrow literal interpretation of subsection (f) is contrary to the spirit of this provision. As the Advisory Committee on Codes of Conduct of the Judicial Conference explained in Advisory Opinion No. 69, the statute, like the ABA Code of Judicial Conduct, "is couched in the present tense, providing that a judge should not sit when he or she 'has' an interest." As the district court noted in *In re Industrial Gas Antitrust Litigation,* No. 80 C 3479 (N.D.Ill. Sept. 24, 1985) (unpublished decision; text available at 1985 WL 2869), the Advisory Committee considered the appearance of impropriety remote where the disqualifying interest comes to light "only after significant expenditures of time and energy *by the judge, by counsel, and by the litigants." Id.* at * 2. While the Advisory Committee is not empowered to render opinions on the law and may only interpret the ABA Code of Judicial Conduct, Congress intended § 455 to conform generally to the Code. See H.Rep. No. 93–1453, 1974 U.S.Code & Cong.Ad.News p. 6351. Therefore, although not controlling, the Advisory Committee's opinion is entitled to some weight.

Recently, the Federal Circuit found that the divestiture of a judge's financial interest *two months after the complaint was filed* "fit squarely" within § 455(f) in *Baldwin Hardware Corp. v. Franksu Enterprise Corp.,* 78 F.3d 550 (Fed.Cir.1996). In that case, the district judge's mother owned a trust which invested in several stocks, among which were shares of plaintiff Baldwin Hardware's parent company, Masco. The judge was a remainderman beneficiary of the trust. Baldwin's complaint in the action was filed in September 1990. The trust sold the Masco stock in November 1990. The district judge entered his first substantive ruling in the case the following month, in December 1990. The parties conducted discovery throughout 1991, and in early 1992 the case went to trial.

At the commencement of trial, reference was made to Baldwin's parent company, Masco. The next day the judge informed the parties that, when the complaint was filed, he had a remainderman interest in the trust which owned Masco stock, but that two months later, that stock was sold. The judge expressed his opinion that the trust's divestiture of the shares well before he became substantively involved in the case or knew of the Masco–Baldwin relationship eliminated any need for recusal, and invited the parties to raise any conflict of interest concerns at that point. Soon thereafter, the defendants moved for the judge to recuse himself. The court denied that motion. The Federal Circuit affirmed.

After discussing the facts concerning the district court's interest and discovery of that interest, the appellate court stated:

> We agree with Baldwin that appellants' assertion of a financial conflict of interest in this matter borders on the frivolous.... Under these facts, Judge Keller clearly was not required to recuse himself.... 28 U.S.C. § 455(f) ... squarely fits the present circumstances. It suggests, in fact, that even if the Masco shares had remained in the trust until Judge Keller discovered the Masco–Baldwin relationship, divestiture of by the trust at that point (or relinquishment by Judge Keller of his remainderman interest in those shares) would have avoided the need for disqualification.... In any event, assuming that the trust's ownership of the Masco shares raised a financial conflict under § 455(b), the November 1990 divestiture of those shares eliminated any such conflict

and any possible need for recusal on that basis.

*Id.* at 556.

Based on the foregoing, the Court determines that there is no basis for mandatory disqualification under § 455(b)(4).

## INTEREST OF FAMILY MEMBERS

■ Plaintiff also argues for disqualification based on § 455(b)(5) which calls for a judge's disqualification if a person "within the third degree of relationship" of either the judge or his spouse "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." As the statute provides, the degree of relationship is to be determined according to the civil law system. 28 U.S.C. § 455(d)(2). Under the civil law system, the following persons are within the third degree of relationship: children; grandchildren; great-grandchildren; parents; grandparents; great-grandparents; uncles; aunts; brothers; sisters; nephews; and nieces. 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *Federal Practice and Procedure: Jurisdiction* § 3548, p. 607, n. 3.

The family limited partnership members consisted of the Court's father and two brothers. As indicated above, the partnership sold its shares of Westinghouse stock in June 1995, and the remainder (200 shares) of its GE stock in February 1996. Thus, the question is whether the partnership's interest in Defendant General Electric is one that may be "substantially affected by the outcome" of this case.

■ Whether an interest is one which could be "substantially affected" by the outcome of a proceeding depends on the interaction of two variables: the remoteness of the interest and its extent or degree. *See* 13A

CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *Federal Practice and Procedure: Jurisdiction* § 3547, p. 603.

In *NEC Corp. v. Intel Corp.*, 654 F.Supp. 1256 (N.D.Cal.1987), (subsequently vacated as moot, 835 F.2d 1546 (9th Cir.1988)), a copyright infringement action, the court was faced with a recusal motion based upon the "other interest" provision of § 455(b)(4) which contains the same "substantially affected by the outcome of the proceeding" language as in subsection (b)(5).[4] In *NEC* the district judge had an interest in a 24–member investment club.[5] The investment club held 60 shares of Intel Corporation. Upon discovery of the fund's ownership of Intel stock, the judge resigned from the investment club, and he relinquished his interest in the Intel stock, which was valued at $80.

The court determined that the judge was not required to disqualify himself from the case *"because Judge Ingram's interest, considering its size and remoteness [i.e., a ¹⁄₂₄ₜₕ share of 60 shares of Intel stock], was too slight"* to be substantially affected by the outcome of the copyright infringement proceeding and "because Judge Ingram has divested himself of his interest in Intel." 654 F.Supp. at 1257 (emphasis added). *See also, In re New Mexico Natural Gas Litigation,* 620 F.2d 794 (10th Cir.1980) (applying the "substantially affected" test, court held that although the trial judge did have an interest in the outcome of the litigation, his interest was insubstantial, and therefore it was error for him to have recused himself); *Polaroid Corp. v. Eastman Kodak Co.,* 867 F.2d 1415 (Fed.Cir.1989), *cert. denied,* 490 U.S. 1047, 109 S.Ct. 1956, 104 L.Ed.2d 425 (1989) (district judge's mother-in-law's ownership of 1,000 shares of Kodak stock when total number of shares outstanding at the time was estimated at 162.5 million shares found by district court to be too insubstantial and insignificant to mandate disqualification in Po-

---

4. In addition to providing for disqualification of a judge who knows that he or she has a direct financial interest in a party or in the subject matter of the proceeding, § 455(b)(4) also provides for disqualification of a judge having "any other interest that could be *substantially affected by the outcome of the proceeding.*"

5. The investment club was determined not to fall within the statutory exception to § 455(b)(4) for

a "mutual or common investment fund" because decisions to buy or sell securities were made by vote of a majority of the voting power present at the meeting of the club members. 654 F.Supp. at 1257, n. 1. This arrangement was determined to make the exception set forth in § 455(d)(4)(i) inapplicable because the judge "participate[d] in the management of the fund." *Id.*

laroid's patent infringement action where instant photography only accounted for 1.3 to 5.1% of Kodak's total sales. *Id.* at 1417.)

Applying the foregoing authorities to the facts of this case, the Court finds that although his father and two brothers did have a shared limited partnership interest in 200 shares of GE stock until February 1996, given that they no longer have *any* interest in the stock, there is no basis whatsoever for an argument that the outcome of this single-plaintiff personal injury action could substantially affect their interest. Therefore, the Court finds no basis for disqualification under § 455(b)(5).

### DISQUALIFICATION UNDER SECTION 455(a)

■ Plaintiff also alternatively seeks disqualification under the general "catch all" provision in Section 455(a). Plaintiff, however, did not substantially brief his subsection (a) argument. Rather, he merely states in two sentences in his initial brief,

> "Under 28 U.S.C. § 455(a), 'a judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.' Based upon his ownership of stock in two Defendant corporations, adequate basis for Judge Rosen's disqualification existed in February of 1995 when the case was assigned to him."

[Plaintiff's initial brief, p. 2.]

■ As the plain language of subsection (a) makes clear, disqualification is called for only when the judge's impartiality "might *reasonably* be questioned." The Sixth Circuit standard in disqualification motions under § 455(a) is that a district judge is required to recuse himself **"only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."** *Wheeler v. Southland Corp.,* 875 F.2d 1246, 1251 (6th Cir.1989); *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir.1980) (impartiality issue is to be determined from the view point of a reasonable person knowing all of the relevant facts). *See also, United States v. Ritter,* 540 F.2d 459, 464 (10th Cir.1976), *cert. denied,* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)

(district court should look at the "total facts" in deciding motion for disqualification). "This standard is *objective* and is not based on the subjective view of a party." *United States v. Nelson,* 922 F.2d 311, 319 (6th Cir.1990), *cert. denied,* 499 U.S. 981, 111 S.Ct. 1635, 113 L.Ed.2d 731 (1991).

Although it is undisputed that the purpose of the disqualification statute is to avoid the appearance of impartiality, *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.,* 690 F.2d 1157 (5th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), the legislative history of the 1974 amendments to Section 455 reveals that Congress intended the statute to be narrowly construed to prevent "judge shopping". For example, the Senate Judiciary Committee warned judges of applying section 455 too cavalierly:

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

S.Rep. No. 93–419, 93rd Cong., 1st Sess.1974 U.S.Code Cong. & Admin.News 6351, 6355.

Construing the legislative history of the 1974 amendments in a lengthy and detailed opinion, the court in *State of Idaho v. Freeman,* 507 F.Supp. 706 (D.Idaho 1981) observed:

> [W]hile the legislative history of section 455 indicates Congress' intention to do away with the "duty to sit" rule and for judges not to consider that duty in "close" cases, they [sic] also show their concern that only in proper cases are judges dis-

qualified and then only if the basis is reasonable.

507 F.Supp. at 722.

Thus, the *Freeman* court rejected the defendant's request for a broad reading of the statute:

[A] broad or liberal application of section 455(a) appears to be against the spirit of this section. If a judge disqualifies himself upon mere application, or mere allegation that his appearance of impartiality might be questioned, it would make the nonpresumptive statute in effect peremptive and encourage judge shopping which is clearly against the mandate of this section's legislative history.

*Id.* at 733.

In this case, as indicated above in this Opinion, the Court did not discover until well into the pendency of this case that his family's limited partnership had a short-lived and relatively insubstantial stock ownership interest in two of the 11 defendants in this action. Upon discovery, the Court immediately moved to terminate its membership in the partnership. As further indicated, while the Court did have an unknown stock ownership interest from February through October 1995, during that period of time, it made no rulings whatsoever in the case, and entered no orders other than a scheduling order and two orders of reference, referring two discovery motions to the magistrate judge for resolution.

Given the foregoing, the Court finds that a reasonable person with knowledge of all of these facts would not reasonably question the Court's impartiality. Therefore, the Court will deny Plaintiffs' Motion for Disqualification.

### III. *CONCLUSION*

For all of the reasons stated in this Memorandum Opinion and Order,

IT IS HEREBY ORDERED that Plaintiff's Motion to Disqualify Judge Pursuant to 28 U.S.C. § 455 be, and hereby is, DENIED.