IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————————

No. 96-31274

—————————————

KRISTIE A. TRAMONTE,

Plaintiff-Appellee,

versus

CHRYSLER CORPORATION, also known as Chrysler
Motors Corporation, ET AL

Defendants,

CHRYSLER CORPORATION, also known as Chrysler
Motors Corporation                    Defendant-Appellant.

—————————————

Appeal from the United States District Court
For the Eastern District of Louisiana

—————————————

March 10, 1998

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Defendant Chrysler Corporation appeals from an order of the district court denying its motion to recuse and a later order remanding the case to state court for want of jurisdiction. Chrysler contends that the denial was erroneous and invalidates all post-recusal rulings by the district judge, here the remand of this case to state court. Concluding that the record is inadequate to permit review of the recusal decision, we vacate the district court's order remanding the case to state court and we remand with instructions to the district court to supplement the record and reconsider Chrysler's recusal motion.

Kristie A. Tramonte filed a "Class Action Petition" in Louisiana state court on May 17, 1995. The Petition alleged that Chrysler's manufacturing process from 1983 through 1994 caused paint to flake from its vehicles. Tramonte, a Louisiana resident, sued Chrysler, an out-of-state entity, and Murphy-Graham, Inc., the Louisiana dealership from whom she purchased her automobile. Tramonte asserted her claim and the claim of an asserted class, described as consisting of all those who "have incurred or will incur damages arising out of the purchase of a defective [Chrysler]."

Chrysler removed the case to federal court, contending that Tramonte had fraudulently joined Murphy-Graham to defeat diversity. Tramonte responded with a motion to remand the case to state court, arguing that there was no complete diversity of citizenship.

The federal case fell first to Judge Okla Jones, but was reassigned to Judge Sarah Vance because of Judge Jones's poor health. Judge Vance also had before her In re Ford Motor Co. Vehicle Paint Litig., No. MDL 1063, that includes a class action alleging that the paint on certain Ford vehicles would peel due to a defective process of manufacture. The same lawyers represented the plaintiffs in the Ford and Chrysler litigations. Before the Ford case had been designated as multidistrict litigation and transferred to Judge Vance, the district court of the Northern District of Alabama held that the joinder of a single, non-diverse

auto dealership in the Ford class action would not defeat federal jurisdiction.

Tramonte withdrew her motion to remand, and several months later the Chrysler class action was reassigned to the newly-appointed Judge Mary Ann Lemmon. Two days later, Tramonte refiled her motion to remand. Chrysler then ran what it describes as a "routine" check of its auto ownership records and discovered that someone in Judge Lemmon's family owned a Chrysler, making that person a potential class member. Then within thirty days of the reinstituted motion to remand, Chrysler asked Judge Lemmon to recuse and return the Chrysler litigation to Judge Vance.[1]

Two months later, on November 8, 1996, by minute order Judge Lemmon summarily disposed of the then-pending motions. She denied Chrysler's motion to recuse, reasoning: "Although members of my family are present and past owners of Chrysler vehicles, only one of them is a present owner and he has no interest in joining the putative class in this case. I have no 'direct or immediate' interest in this case which requires my recusal." Judge Lemmon then granted Tramonte's motion to remand the case to state court, concluding that Chrysler had not demonstrated that Murphy-Graham had been fraudulently joined to defeat diversity. At the time remand was ordered, no decision regarding certification of the

---

[1]Chrysler has never alleged, nor have we found, that Judge Lemmon has demonstrated any bias in this matter. Rather, Chrysler has contended that the federal recusal statute is absolutist in nature, and Judge Lemmon's personal, though attenuated, connection to the case created at least the potential for an appearance of impropriety.

class had been made and it appeared that the district court had not devoted substantial judicial time to the case.

On December 4, 1996, Chrysler filed a notice of appeal of the orders refusing to recuse, refusing to transfer the case, and remanding to state court. Chrysler also attacked the recusal decision by a petition for a writ of mandamus. On December 11, 1996, we denied Chrysler's writ petition by a summary order without opinion.

## II.

We first consider Tramonte's challenge to our jurisdiction. Tramonte argues that we cannot reverse the remand order, because the merits of a district court's ruling on jurisdiction are beyond us. As 28 U.S.C. § 1447(d) provides, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." See also Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 343 (1976).

Yet the dictates of § 1447(d) are not as absolutist as its language would imply. Rather, "only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d). As long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction -- the grounds for remand recognized by § 1447(c) -- a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)." Things Remembered, Inc. v. Petrarca, 116 S. Ct. 494, 497 (1995); see also Thermtron Prods., 423 U.S. at 345-52. Thus, the Court has recognized that § 1447(d)

4

intends to insulate from appellate review a district court's determinations as to its subject matter jurisdiction and compliance with remand procedures. By implication therefore, we may reach and modify a remand order on appeal, so long as we do not engage in the review prohibited by § 1447(d).

Here, the district court unquestionably based its decision to remand on a lack of subject matter jurisdiction. Yet Chrysler does not seek to revisit that jurisdictional determination. Rather, it contends that Judge Lemmon lacked the authority to enter the remand order, because she was disqualified from handling the case by the federal recusal statute. See 28 U.S.C. § 455(b). As we have held, once a judge recuses herself, that judge should take no further action in the case, except to transfer the matter to another federal judge. See United States v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997); Doddy v. Oxy USA, Inc., 101 F.3d 448, 458 (5th Cir. 1996). Thus, if Judge Lemmon should have recused herself, any orders she entered following disposition of the recusal motion should be vacated.

Our vacatur of the remand order would therefore not constitute a review of the merits of that order, prohibited by 28 U.S.C. § 1447(d). Rather, we would be performing an essentially ministerial task of vacating an order that the district court had no authority to enter for reasons unrelated to the order of remand itself. We have previously gone so far as to vacate a remand order after concluding that a district court did not have the authority to determine *sua sponte* that there was a procedural defect in a

5

removal from state court, even though that determination implicated nonreviewable jurisdictional questions. See In re Allstate Ins. Co., 8 F.3d 219 (5th Cir. 1993). Surely, therefore, we can vacate a remand order because of a judge's preceding failure to recuse herself, a rationale far removed from the issue of subject matter jurisdiction, taboo to us under § 1447(d).

Tramonte also contends that our denial of mandamus relief to Chrysler should prohibit this appeal, which raises the same issues as the mandamus petition. Yet it is fundamental that mandamus is only appropriate in extraordinary circumstances, typically where relief is unavailable via an appeal. See Campanioni v. Barr, 962 F.2d 461, 464 (5th Cir. 1992). Our summary denial of Chrysler's petition for a writ of mandamus cannot be considered an adjudication of these issues on the merits. Cf. Key v. Wise, 629 F.2d 1049, 1054-55 (5th Cir. 1980), cert. denied, 454 U.S. 1103 (1981). Accordingly, no law of the case has been established, and Chrysler is free to relitigate the recusal issue on appeal. See In re Chevron U.S.A. Inc., 121 F.3d 163, 167 (5th Cir. 1997).

We conclude that we have jurisdiction over this appeal.[2] In

---

[2]Chrysler also suggests that we have jurisdiction pursuant to City of Waco v. United States Fidelity & Guar. Co., 293 U.S. 140 (1934). In Waco, the Supreme Court held that orders entered before a remand to state court which are separate from the remand may be reviewed on appeal, even if the remand itself is nonreviewable. See id. at 143. As we have explained the Waco doctrine:

 Although this court has no jurisdiction to review a district court's judgment which remands a cause of action to state court for lack of subject matter jurisdiction, any aspect of that judgment which is distinct and separable from the remand proper may be reviewed on appeal.

John G. & Marie Stella Kenedy Mem'l Found. v. Mauro, 21 F.3d 667, 670 (5th Cir.) (citations omitted), cert. denied, 513 U.S. 1016

6

entertaining this appeal, we do not intrude upon the bar against reviewing the merits of remand orders.

III.

We now turn to the merits of Judge Lemmon's recusal decision. Chrysler argues that Judge Lemmon should have automatically disqualified herself from the case pursuant to 28 U.S.C. §§ 455(b)(4) & (b)(5). Section 455 provides, in relevant part:

> (b) [A judge] shall also disqualify himself in the following circumstances:
> . . . .
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy . . . .
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> (i) Is a party to the proceeding . . . .
> . . . .
> (d) For the purposes of this section . . .
> . . . .
> (4) "financial interest" means ownership of a legal or equitable interest, however small . . . .

In ruling on the recusal motion, Judge Lemmon disclosed that members of her family had owned Chryslers, and she acknowledged that one member presently owns one. Chrysler thus contends that a family member of Judge Lemmon's either has a "financial interest" in the outcome of the case under § 455(b)(4) or is a "party" to the action under § 455(b)(5). Judge Lemmon declined to recuse herself, however, reasoning that her family member who is an owner of a Chrysler had no interest in joining the class.

---

(1994). It is unnecessary to utilize <u>Waco</u> in this case, however, because we find the remand order itself to be reviewable, as it was entered without authority if the district court should have recused.

7

Unfortunately, Judge Lemmon's disclosure and the record otherwise is not adequate to review the order denying Chrysler's motion to recuse. Judge Lemmon's statement that family members have in the past owned Chryslers, and one family member presently possesses one, does not disclose whether those family members purchased Chryslers manufactured between 1983 and 1994, the relevant class period, nor does it disclose whether any of those Chryslers ever exhibited flaking paint. The class petition is unclear as to the precise parameters of the putative class. We decline to read it as broadly as Chrysler suggests to include any purchaser of a Chrysler between 1983 and 1994, even if that purchaser later resold the vehicle. To establish a claim for that large a class, the plaintiffs would have to prove that the price of all Chryslers in the resale market was depressed by the flaking-paint problem, whether or not those vehicles had yet exhibited defective paint. Neither the plaintiffs' attorneys nor the Class Petition have expressed a willingness to tackle such a daunting task. On the other hand, an original purchaser of a Chrysler who sold the vehicle while its paint was flaking or who repainted the car at his own expense would arguably fall within the class, as that individual would have incurred quantifiable, rather than abstract, damages. Judge Lemmon's statement that her family members have in the past owned Chryslers is insufficient to determine her recusal status, because it does not indicate whether those Chryslers ever exhibited flaking paint.

8

More importantly, Judge Lemmon's statement does not reflect the degree of relationship between herself and the family member who owns a Chrysler and the family members who have owned Chryslers, if the latter fall within the class definition. This relationship is critical to the recusal question.

If the unknown family members are a spouse or minor children residing in Judge Lemmon's household, then her recusal would be required under the per se rule of § 455(b)(4). Should the class action prove successful, Judge Lemmon's spouse or minor child would be entitled to recover financially. Although few federal courts have ever reached the issue squarely, it seems fairly obvious that where a judge or an immediate family member is a member of a class seeking monetary relief, § 455(b)(4) requires recusal because of the judge's financial interest in the case. Cf. In re City of Houston, 745 F.2d at 928 n.6 (strongly implying that judges must recuse themselves if they are class members with a pecuniary interest in the outcome of the litigation); Christiansen v. National Sav. & Trust Co., 683 F.2d 520, 526 (D.C. Cir. 1982) (implying that judges should recuse themselves if they are members of a class for which individual recovery is sought); In re Cement Antitrust Litig., 673 F.2d 1020, 1024 (9th Cir. 1982) (implying that judge's ownership of stock in a putative class member requires recusal). A remote, contingent, or speculative interest is not a disqualifying financial interest under the statute. See In re Placid Oil Co., 802 F.2d 783, 786-87 (5th Cir. 1986) (holding that judge's investment in a non-party bank did not require his recusal

from a case with a different bank as a party, even though that case might have affected the banking industry). For example, owning stock in a publicly held company that may own a Chrysler vehicle offers no more than a remote or speculative interest. On the other hand, of course, where a judge is a class member in an action seeking monetary relief, her direct financial interest runs afoul of § 455(b)(4).

Tramonte contends that even if the family members Judge Lemmon spoke of satisfied the degrees of relatedness specified in § 455(b)(4), because the plaintiff's class has not yet been certified, those family members have acquired no "financial interest" in the case. To support this proposition, Tramonte relies upon New Orleans Pub. Serv. v. United Gas Pipe Line Co., 719 F.2d 733 (5th Cir. 1983). New Orleans Pub. Serv. is neither a panel nor an en banc opinion of this court; rather, it is a published order by Chief Judge Clark explaining why several circuit judges opted not to recuse themselves from an en banc poll. In the order, Chief Judge Clark quoted with approval an advisory letter expressing the opinion of the Advisory Committee on Codes of Conduct of the Judicial Conference of the United States. The Committee believed that only judges who are members of *certified* classes are parties to class litigation. See id. at 735. Because the en banc issue did not involve class certification itself, the four judges who were potential class members concluded that they could participate in the en banc poll. See id.

To the extent that New Orleans Pub. Serv. order has precedential value, it does not control the § 455(b)(4) issue in this case. The problem in New Orleans Pub. Serv., as described by Chief Judge Clark, was whether the four judges in question were "members of a putative class and therefore potential parties to [the] action." Id. at 734. That inquiry is a § 455(b)(5) question. Chief Judge Clark did not address the separate problem of those judges' "financial interest" in the case under § 455(b)(4).

We conclude that where a judge, her spouse, or a minor child residing in her household is a member of a putative class, there exists a "financial interest" in the case mandating recusal under § 455(b)(4). The statute stresses that any financial interest, "however small," requires the recusal of a judge. The fact that a class has not yet been certified unquestionably diminishes the expected value of the outcome of the litigation to the interested judge, as it makes a financial recovery less certain. Yet recovery in any matter that has not reached a final judgment is uncertain; otherwise, there would be no case or controversy. Because § 455(b)(4) requires recusal for even paltry financial interests, the increased uncertainty of recovery in the precertification stage of a class action affects the size but not the existence of a disqualifying financial interest. The decision on a request to certify is itself a critical step, often with large financial consequences. An assertion that a member of a putative class lacks

11

a financial interest relevant to the trial court's decision until after the class is certified blinks at reality.

A different result obtains, however, if Judge Lemmon's unknown family members are neither her spouse nor minor children, but are related to her within the third degree, as specified by § 455(b)(5).[3] In such a case, the statute requires recusal if the family members are a "party" to the class action. But members of a putative class are not "parties" to a class action for these purposes. See New Orleans Pub. Serv., 734 F.2d at 735 (reporting opinion of Advisory Committee on Codes of Conduct of the Judicial Conference of the United States that judges need not recuse themselves for being "parties" to a class action if the class had not yet been certified).[4]

Of course, even if a judge's relative is not yet "a party" to a class action, a judge could advance the interests of that relative in the pre-certification stage of class litigation. The way to guard against this danger, however, lies not with § 455(b)(5), but under § 455(a). According to 28 U.S.C. § 455(a), a

---

[3]The difference in the degrees of relationship identified by §§ 455(b)(4) & (b)(5) make the differing standards of recusal in the two sections relevant. Cf. In re City of Houston, 745 F.2d at 928 n.6 ("The issue is not before us whether a member of a class is a party where the interest involved is pecuniary. Yet we doubt that the question need ever be reached, since where the interest is pecuniary the judge will be disqualified under the *per se* rule [of § 455(b)(4)], and the matter of whether the judge or a close relation is a party becomes moot.").

[4]We need not reach the question of whether a class member who is not the named plaintiff is a party to a class action under § 455(b)(5). See In re Cement Antitrust Litig., 688 F.2d 1297, 1309-13 (discussing the issue).

judge should recuse herself from "any proceeding in which [her] impartiality might reasonably be questioned." Thus, if upon remand Judge Lemmon discloses that the family members in question are neither her spouse nor minor children residing in her household, she should consider her recusal status under § 455(a).

In sum, a remand is necessary for Judge Lemmon to clarify the degree of relationship between herself and the individuals who own or have owned a Chrysler. If those family members are her spouse or minor children residing in her household, her recusal would have been required and her remand to state court would be void. If, on the other hand, those family members are more distantly related and Judge Lemmon determines that there is no § 455(a) basis for disqualification, recusal would be unnecessary and Judge Lemmon would be free to reinstate the order of remand to state court that we vacate today.

Tramonte, however, contends that our remand to Judge Lemmon is inappropriate because the inadequacy of the record demonstrates that Chrysler has failed to meet its burden of proof for recusal. Yet Judge Lemmon was under the duty to police her disqualification status. A judge has a duty to be watchful of such disqualifying circumstances and decide any requests to recuse with disclosure necessary to the decision made clear upon the record.

Tramonte advances a further argument that she contends makes a remand unnecessary. Tramonte asserts that it is irrelevant whether or not Judge Lemmon's family members ever had a financial interest in this case pursuant to § 455(b)(4), because that

13

interest was relinquished by Judge Lemmon's statement that her family member "has no interest in joining the putative class in this case." As this case would be a class action under Rule 23(b)(3), the argument goes, Judge Lemmon's family member would have the right to opt out. See Fed. R. Civ. Pro. 23(b)(3). Thus, contends Tramonte, Judge Lemmon's stated intent to opt out of any certified class ends any disqualifying interest, pointing to Union Carbide Corp. v. United States Cutting Serv., 782 F.2d 710 (7th Cir. 1986). In Union Carbide, a trial judge's husband owned stock in an unnamed class member. The Seventh Circuit held that the judge was not required to recuse herself under § 455(b)(4), because once she learned of her financial interest in the case, she halted her participation in the matter until her husband sold the stock in question. See id. at 714-15.

Subsequent statutory developments, however, have substantially undercut the majority rationale in Union Carbide. The dissent in Union Carbide argued that the provisions of § 455(b)(4) are absolutist; as soon as a judge becomes aware that she has a financial interest in a case, that judge must disqualify herself immediately. See id. at 717 (Flaum, J., dissenting). The statute as it existed in 1986 spoke nothing of divestment of a financial interest. See id. Thus, according to the dissent, disqualification becomes automatic from the moment a judge discovers her financial interest in the litigation; relinquishment of that interest at any point after discovery is no remedy. Congress partially adopted the Union Carbide dissent's position in

14

its 1988 amendments to § 455. In that legislation, Congress added subsection (f) to § 455, permitting judges to divest themselves of financial interests in a case and retain control over it so long as they have devoted "substantial judicial time" to the matter. See 28 U.S.C. § 455(f). Logically, therefore, divestment should only be an effective way to escape recusal if a judge has already devoted "substantial judicial time" to a case.

Chrysler argues to us that Judge Lemmon's disavowal of an interest in participating in the class action was somehow inadequate, as it was not formal and it was not clear that Judge Lemmon had the legal authority to speak on behalf of her family member. Whether this is true or not is immaterial, however, because § 455 makes the divestment option unavailable to Judge Lemmon. Judge Lemmon first received this case on July 24, 1996, and she ruled on the recusal and remand motions summarily on November 8, 1996. From the record, it appears that Judge Lemmon did little additional work on the matter in the interim. Thus, it can hardly be said that Judge Lemmon devoted "substantial judicial time" to the case.

Consequently, if Judge Lemmon's spouse or a minor child residing in her household had a financial interest in the outcome of the case, she was automatically required to recuse herself; she did not have the option under § 455(f) to divest herself of that interest. Furthermore, Judge Lemmon stated only that her family member who presently owns a Chrysler had no interest in participating in the class action. She did not also "opt out" any

15

of her family members who had in the past purchased Chryslers but no longer possessed them, who might be members of the putative class as well.

Finally, Tramonte advances a policy argument against our holding today. She contends that requiring recusal in a case like this one would cause disaster in the federal courts, as scores of judges would have to recuse themselves in typical consumer class actions.  Thus, Tramonte argues that Judge Lemmon should be allowed to preside over this case despite her possible financial interest in it.  It is true that the Supreme Court has recognized a "rule of necessity," whereby judges can handle cases in which they have a personal interest if "the case cannot be heard otherwise." United States v. Will, 449 U.S. 200, 214 (1980).  Yet Tramonte has made an insufficient showing to entitle herself to invoke the rule.  Until Tramonte demonstrates that every judge available to her is a potential class member, we must enforce § 455(b) by its strict terms.  The hair trigger of "any financial interest" may be unwise and may  produce results difficult to defend.  Its unforgiving bite was the creation of Congress.  And relaxation of the rule of financial interest must come from that body.

## IV.

We VACATE the order remanding this case to state court and REMAND to the district court for proceedings consistent with this opinion.

VACATED AND REMANDED.

16