Filed: May 2, 2014

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1839**

(1:12-cv-01780-WMN)

JOYCE BARLOW,

             Plaintiff - Appellee,

     v.

COLGATE PALMOLIVE COMPANY,

             Defendant – Appellant,

        and

JOHN CRANE-HOUDAILLE, INCORPORATED; E.L. STEBBING & COMPANY, INC.; HAMPSHIRE INDUSTRIES, INC., f/k/a John H. Hampshire Company; UNIVERSAL REFRACTORIES COMPANY; J.H. FRANCE REFRACTORIES COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY, f/k/a Kelly Springfield Tire Company; MCIC, INC., and its remaining Director Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Schunk; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc., Successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation; METROPOLITAN LIFE INSURANCE COMPANY; A.W. CHESTERTON COMPANY; CERTAINTEED CORPORATION, individually and as successor to Bestwall Gypsum Co.; KAISER GYPSUM COMPANY, INC.; UNION CARBIDE CORPORATION; INTERNATIONAL PAPER COMPANY, individually and as successor in interest to Champion International Corporation and U.S. Plywood Corp.; BAYER CROPSCIENCE, INC., individually and as successor in interest to Benjamin Foster Co., Amchem Products, Inc., H.B. Fuller Co., Aventis CropScience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc. and Rhodia, Inc.; COOPER INDUSTRIES, INC., individually and as successors in interest to Crouse Hinds Co.; PFIZER CORPORATION; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company, individually and as successor in interest to Electric Controller and Manufacturing Co.; GEORGIA-PACIFIC, LLC, individually and as successor to Bestwall Gypsum Co.;

FOSTER WHEELER CORPORATION; THE WALLACE & GALE ASBESTOS SETTLEMENT TRUST; CONWED CORPORATION; GENERAL ELECTRIC COMPANY; and GEORGIA PACIFIC CORPORATION, individually and as successor in interest to Bestwall Gypsum Co.,

Defendants.

---

**No. 13-1840**
(1:12-cv-01781-WMN)

---

CLARA G. MOSKO,

Plaintiff - Appellee,

v.

COLGATE PALMOLIVE COMPANY,

Defendant – Appellant,

and

JOHN CRANE-HOUDAILLE, INCORPORATED; E.L. STEBBING & CO., INCORPORATED; HAMPSHIRE INDUSTRIES, INC., f/k/a John H. Hampshire Company; UNIVERSAL REFRACTORIES COMPANY; J.H. FRANCE REFRACTORIES COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY, f/k/a Kelly Springfield Tire Company; MCIC, INC., and its remaining Director Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Schunk; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc.,f/k/a Westinghouse Electric Corporation; METROPOLITAN LIFE INSURANCE COMPANY; A.W. CHESTERTON COMPANY; CERTAINTEED CORPORATION, individually and as successor to Bestwall Gypsum Co.; KAISER GYPSUM COMPANY, INC.; UNION CARBIDE CORPORATION; INTERNATIONAL PAPER COMPANY, individually and as successor in interest to Champion International Corporation and U.S. Plywood Corp.; BAYER CROPSCIENCE, INC., individually and as successor in interest to Benjamin Foster, Co., Amchem Products, Inc., H.B. Fuller Co., Aventis Cropscience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc. and Rhodia, Inc.; COOPER INDUSTRIES, INC., individually and as successors in interest to Crouse Hinds Co.; PFIZER CORPORATION; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company, individually and as successor in interest to

2

Electric Controller and Manufacturing Co.; FOSTER WHEELER CORPORATION; THE WALLACE & GALE ASBESTOS SETTLEMENT TRUST; CONWED CORPORATION; GEORGIA-PACIFIC, LLC, individually and as successor to Bestwall Gypsum Co.; 3M COMPANY; MALLINCKRODT, INC.; CROWN, CORK & SEAL CO., INC.; KOPPERS COMPANY, INC.; WALTER E. CAMPBELL CO., INC.; KRAFFT-MURPHY COMPANY, individually and as successor to National Asbestos Company, a dissolved Delaware Corporation; AC&R INSULATION CO., INC.; COTY, INC.; JOHNSON & JOHNSON; LUZENAC AMERICA INC.; R.T. VANDERBILT COMPANY, INC.; BAYER CORPORATION, as successor in interest to Sterling Drug, Inc., and Sterling-Winthrop Inc.; and GENERAL ELECTRIC COMPANY,

Defendants.

---

O R D E R

---

The Court amends its opinion filed April 30, 2014, as follows:

On page 28, first full paragraph, line 1 -- "the opinion is Durango Crushers" is corrected to read "the opinion in Durango Crushers."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

3

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1839

JOYCE BARLOW,

          Plaintiff - Appellee,

     v.

COLGATE PALMOLIVE COMPANY,

          Defendant – Appellant,

     and

JOHN CRANE-HOUDAILLE, INCORPORATED; E.L. STEBBING & COMPANY, INC.; HAMPSHIRE INDUSTRIES, INC., f/k/a John H. Hampshire Company; UNIVERSAL REFRACTORIES COMPANY; J.H. FRANCE REFRACTORIES COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY, f/k/a Kelly Springfield Tire Company; MCIC, INC., and its remaining Director Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Schunk; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc., Successor by merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation; METROPOLITAN LIFE INSURANCE COMPANY; A.W. CHESTERTON COMPANY; CERTAINTEED CORPORATION, individually and as successor to Bestwall Gypsum Co.; KAISER GYPSUM COMPANY, INC.; UNION CARBIDE CORPORATION; INTERNATIONAL PAPER COMPANY, individually and as successor in interest to Champion International Corporation and U.S. Plywood Corp.; BAYER CROPSCIENCE, INC., individually and as successor in interest to Benjamin Foster Co., Amchem Products, Inc., H.B. Fuller Co., Aventis CropScience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc. and Rhodia, Inc.; COOPER INDUSTRIES, INC., individually and as successors in interest to Crouse Hinds Co.; PFIZER CORPORATION; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company, individually and as successor in interest to Electric Controller and Manufacturing Co.; GEORGIA-PACIFIC, LLC, individually and as successor to Bestwall Gypsum Co.; FOSTER WHEELER CORPORATION; THE WALLACE & GALE ASBESTOS

SETTLEMENT TRUST; CONWED CORPORATION; GENERAL ELECTRIC COMPANY; and GEORGIA PACIFIC CORPORATION, individually and as successor in interest to Bestwall Gypsum Co.,

Defendants.

————————

**No. 13-1840**

————————

CLARA G. MOSKO,

Plaintiff - Appellee,

v.

COLGATE PALMOLIVE COMPANY,

Defendant – Appellant,

and

JOHN CRANE-HOUDAILLE, INCORPORATED; E.L. STEBBING & CO., INCORPORATED; HAMPSHIRE INDUSTRIES, INC., f/k/a John H. Hampshire Company; UNIVERSAL REFRACTORIES COMPANY; J.H. FRANCE REFRACTORIES COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY, f/k/a Kelly Springfield Tire Company; MCIC, INC., and its remaining Director Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Schunk; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc.,f/k/a Westinghouse Electric Corporation; METROPOLITAN LIFE INSURANCE COMPANY; A.W. CHESTERTON COMPANY; CERTAINTEED CORPORATION, individually and as successor to Bestwall Gypsum Co.; KAISER GYPSUM COMPANY, INC.; UNION CARBIDE CORPORATION; INTERNATIONAL PAPER COMPANY, individually and as successor in interest to Champion International Corporation and U.S. Plywood Corp.; BAYER CROPSCIENCE, INC., individually and as successor in interest to Benjamin Foster, Co., Amchem Products, Inc., H.B. Fuller Co., Aventis Cropscience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc. and Rhodia, Inc.; COOPER INDUSTRIES, INC., individually and as successors in interest to Crouse Hinds Co.; PFIZER CORPORATION; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company, individually and as successor in interest to Electric Controller and Manufacturing Co.; FOSTER WHEELER CORPORATION; THE WALLACE & GALE ASBESTOS SETTLEMENT TRUST;

2

CONWED CORPORATION; GEORGIA–PACIFIC, LLC, individually and as successor to Bestwall Gypsum Co.; 3M COMPANY; MALLINCKRODT, INC.; CROWN, CORK & SEAL CO., INC.; KOPPERS COMPANY, INC.; WALTER E. CAMPBELL CO., INC.; KRAFFT–MURPHY COMPANY, individually and as successor to National Asbestos Company, a dissolved Delaware Corporation; AC&R INSULATION CO., INC.; COTY, INC.; JOHNSON & JOHNSON; LUZENAC AMERICA INC.; R.T. VANDERBILT COMPANY, INC.; BAYER CORPORATION, as successor in interest to Sterling Drug, Inc., and Sterling-Winthrop Inc.; and GENERAL ELECTRIC COMPANY,

Defendants.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore.  William M. Nickerson, Senior District Judge.  (1:12-cv-01780-WMN; 1:12-cv-01781-WMN)

---

Argued:  March 19, 2014                    Decided:  April 30, 2014

---

Before FLOYD, Circuit Judge, DAVIS, Senior Circuit Judge, and Max O. COGBURN, United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Senior Judge Davis wrote the majority opinion, in which Judge Cogburn joined. Judge Floyd wrote a dissenting opinion.

---

**ARGUED**: William Balden Adams, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York, for Appellant.  Jennifer Louise Lilly, LAW OFFICES OF PETER G. ANGELOS, Baltimore, Maryland, for Appellees. **ON BRIEF**: Thomas P. Bernier, SEGAL MCCAMBRIDGE SINGER & MAHONEY, Baltimore, Maryland; Faith E. Gay, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York, for Appellant.

---

DAVIS, Senior Circuit Judge:

The federal removal statute immunizes from review – appellate or otherwise – any order remanding to state court a case removed to federal court, with an exception for certain civil rights cases or suits against federal officers. 28 U.S.C. § 1447(d). In particular, the statute has been interpreted to "preclude review only of remands for lack of subject-matter jurisdiction and for defects in removal procedure." Powerex Corp. v. Reliant Energy Services, Inc., 551 U.S. 224, 229 (2007). The removing defendant in this case, the Colgate Palmolive Company, asks us to hold that the statute permits an exception to its prohibition: that a federal court may strike a remand order and retrieve a remanded case from its state cousin as a sanction against plaintiffs' counsel for making misrepresentations to the federal court related to the existence of subject-matter jurisdiction. It invokes in support the district court's inherent authority and Rules 11 and 60 of the Federal Rules of Civil Procedure.

We are unpersuaded. In the face of Congress' explicit direction to federal courts that an order remanding a case for lack of subject-matter jurisdiction after it has been removed "is not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d), we reject Colgate's collateral attack on the remand orders in

4

this case and affirm the order of the district court insofar as it ruled that it lacked jurisdiction.

I.

Joyce Barlow and Clare Mosko separately sued Colgate and a variety of other companies in Maryland state court, asserting that each of the defendants' products had at some point exposed them to asbestos. With respect to Colgate, the plaintiffs' theory was that its "Cashmere Bouquet" line of powder makeup products contained unhealthy levels of asbestos and had thereby contributed to the plaintiffs' health problems. Despite plaintiffs' joinder of in-state defendants, Colgate removed the two cases to federal court on the basis of diversity of citizenship, asserting fraudulent joinder as to the in-state defendants, and alleging that the plaintiffs' deposition testimony and interrogatory responses demonstrated that they did not intend to pursue a claim against any defendant other than Colgate, a citizen of Delaware and New York.

After removal, the plaintiffs' lawyers moved to remand the cases to state court, arguing that they had viable claims against the nondiverse defendants. The district court agreed, finding that although only Colgate's Cashmere Bouquet products had been identified by the plaintiffs as the source of their asbestos exposure, there was still more than a "glimmer of hope," Hartley v. CSX Transportation, Inc., 187 F.3d 422, 426

5

(4th Cir. 1999), that the plaintiffs could identify a basis to recover against the nondiverse defendants as discovery proceeded. J.A. 358, 368. The cases were remanded.

On remand, counsel for the plaintiffs asked the state court to consolidate the two cases because, among other reasons, "[a]ll [plaintiffs] allege exposure to asbestos-containing Cashmere Bouquet powder products only and do not allege exposure to any other asbestos, asbestos-containing products or asbestos-containing dust in any other form." J.A. 474 (emphasis added). Irritated by the change in tune, Colgate then promptly moved in the district court for vacatur of the remand order as a sanction. The district court denied the motion, stating that reconsideration of the remand order is prohibited by the removal statute and pertinent Circuit law. The district court stated further that it was "not convinced that counsel's conduct is sanctionable" because the alleged misrepresentations were "attributable to different attorneys in markedly different litigation contexts." J.A. 1108.

## II.

On appeal, Colgate contends that it was error for the district court to rule that it did not have the authority to consider whether plaintiffs' counsel committed misconduct and "whether such misconduct warrants relief from the Remand Orders." App. Reply Br. 2. It asks that we reverse the district

6

court's order denying the motion for vacatur and remand the case with instructions that the remand orders be vacated. Colgate maintains that the district court had authority, pursuant to its inherent authority and Rules 11 and 60(b)(3) of the Federal Rules of Civil Procedure, to strike the remand orders as a sanction. We review questions of law de novo. Trans Energy, Inc. v. EQT Prod. Co., 743 F.3d 895, 900 (4th Cir. 2014).

Fueled by a desire to cut off costly and prolonged jurisdictional litigation, Powerex, 551 U.S. at 238, the federal removal statute generally prohibits review of orders remanding removed cases:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 [cases against federal officers] or 1443 [certain civil rights cases] of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added). Read in conjunction with 28 U.S.C. § 1447(c), the statute's prohibition has been construed to preclude review of remands "colorably characterized" as for lack of subject-matter jurisdiction or defects in removal procedure. Powerex, 551 U.S. at 234, 229. Courts may not review, for example, an order remanding a case for lack of diversity jurisdiction even in the face of evidence of fraudulent joinder, In re Lowe, 102 F.3d 731, 733-34 (4th Cir. 1996), or an order remanding a case for lack of federal

7

question jurisdiction after the district court has held that a federal statute did not completely preempt state law. In re Blackwater Security Consulting LLC, 460 F.3d 576, 585 (4th Cir. 2006). The corollary to the statute's prohibition is that courts may review remands when they are not based on a lack of subject-matter jurisdiction or a defect in removal procedure, such as when the review is of a decision collateral and severable from the remand order, or when the remand order is outside the district court's authority. Lisenby v. Lear, 674 F.3d 259, 261 (4th Cir. 2012).

Colgate frames the issue in this case as whether the statute permits appellate review of an order denying a request to strike a remand order as a sanction for counsel's alleged misrepresentation regarding the existence of subject-matter jurisdiction. 28 U.S.C. § 1447(d). Put differently, Colgate, seeking to draw us into the merits (rather than the procedural correctness) of the district court's order, asks us to hold that we may review a remand order, even though the case does not relate to the exceptions noted in 28 U.S.C. § 1447(d), if the basis for review relates to a material misrepresentation made by counsel that induced the district court to remand the case. We decline Colgate's invitation. Put simply, we discern no basis to infer that Congress intended to etch a litigation-integrity

policing exception into its prohibition on the review of remand orders.

As an initial matter, no court has ever embraced the argument Colgate puts forward today, and for a simple reason: it is a long-standing principle that entry of an order remanding a case to state court divests the district court "of all jurisdiction in [the] case and preclude[s] it from entertaining any further proceedings of any character, including the defendants' motion to vacate the original remand order." Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 115 (4th Cir. 1979) (emphasis added). In this context, it is manifest that the law favors finality so that jurisdictional litigation comes to an end and the parties can proceed to the merits and avoid unnecessary delay and expense. For Colgate to have returned to the district court to seek a sanction in the form of vacatur of the remand orders is, to put it simply, an anomaly in federal jurisdiction.

Colgate insists that counsel's misrepresentation undermines the basis for the remand order, and it cites Rules 11 and 60(b)(3) of the Federal Rules of Civil Procedure and the case law describing the district court's inherent authority as support for its argument that a district court may take some

9

remedial action to sanction a lawyer for misconduct.[*] But there is nothing in the Federal Rules or the case law bearing on a federal court's inherent authority that authorizes the retention of federal jurisdiction as a sanction. Nor could there be: while a defendant certainly has a right to a federal forum, it is something quite different to argue that a district judge should claw a case back into federal court as a remedy to deter future attorney misconduct or to remedy a perceived injury to the integrity of the litigation process. After all, a state court "operates with an eye to justice, just the same as that of the federal court," and both equally offer Colgate a meaningful opportunity to vigorously litigate its defense on the merits. 20 Charles Alan Wright & Mary Kay Kane, Federal Practice and Procedure § 43 (2d ed. 2011) (quoting Pabst v. Roxana Petroleum Co., 30 F.2d 953, 954 (S.D. Tex. 1929)).

Colgate counters with a clever but ultimately misplaced argument: the federal statute prohibits "review" of remand

---

[*] Rule 11 specifically authorizes the imposition of sanctions for misrepresentations, but the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4). Analogously, Rule 60(b)(3) provides that a court "may relieve a party" from an "order" for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3). Furthermore, "the inherent power . . . allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court," Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

10

orders, but a "request for vacatur as either a sanction or pursuant to Rule 60(b)(3) based on misrepresentations and misconduct does not seek . . . 'review'" of a remand order. App. Br. 21. Review, argues Colgate, is "directed at the substance of what is being reviewed, not at matters collateral" to the merits of the remand order. App. Br. 21. Here, the issue is whether the district court should impose a sanction against plaintiffs' counsel for allegedly misrepresenting their intent to pursue relief against nondiverse defendants; Colgate argues that its request is therefore unrelated to the merits of the remand orders and is instead about something collateral to the remand orders, i.e., attorney misconduct.

Colgate's proffered distinction suffers from three flaws. First, creating an attorney-misconduct exception to the prohibition on review of remand orders would be contrary to Congress' intent, as evidenced by the text and underlying policy goals of the federal statute. The statute provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d) (emphasis added); a phrase of such breadth clearly sweeps collateral challenges on remand orders within the statute's prohibition. Our case law construing the text is even clearer: we have said, unequivocally, that "the district court has one shot, right or wrong," to decide whether a removed case

11

should be remanded. <u>Lowe</u>, 102 F.3d at 735 (alterations, quotations, and citations omitted).

Even more conclusive is that the policy underlying 28 U.S.C. § 1447(d) – to neutralize "prolonged litigation on threshold nonmeritorious questions" – weighs strongly against the argument that Congress intended to carve an attorney-misconduct exception into the federal statute. <u>Powerex</u>, 551 U.S. at 237. The prohibition on reviewability of remand orders has been "a part of American jurisprudence for at least a century," <u>Lowe</u>, 102 F.3d at 734, and we have said that the underlying policy is so potent that it mandates nonreviewability "even if the remand order is manifestly, inarguably erroneous." <u>Lisenby</u>, 674 F.3d at 261 (citations and quotations omitted). The Supreme Court has acknowledged that the absolute nature of the prohibition creates "undesirable consequences" even in cases with significant countervailing federal interests. <u>Powerex</u>, 551 U.S. at 237. The consequence of all of this is that it is difficult, if not impossible, for us to conclude that Congress intended implicitly for the rules against litigation misconduct to create an escape hatch within its robust statutory prohibition on the reviewability of remand orders.

Second, Colgate's argument that it is not seeking "review" is simply incorrect because its request necessarily requires a merits review of the remand orders. Colgate's argument boils

12

down to the following: the plaintiffs' fraudulent joinder was so deeply buried that they managed to deceive the district court into remanding, and now that we know the truth because of new evidence (the transcript of what plaintiffs' counsel told the state court, post remand), the remand must be vacated as a sanction. The argument fails because it seeks to relitigate the merits of an issue already litigated: whether the plaintiffs fraudulently joined the nondiverse defendants, which was the issue the first-time around. Colgate had its chance to prove fraudulent joinder. It failed. It does not get a second try with an improved record.

Third, the cases cited by Colgate, in support of the proposition that its request for vacatur as a sanction is not "review" of a remand order, are easily distinguishable because they involved vacatur of remands based on rulings several steps removed from the core jurisdictional inquiry. In Aquamar v. Del Monte Fresh Produce, 179 F.3d 1279, 1285-89 (11th Cir. 1999), the Eleventh Circuit reversed the district court's dismissal of claims on the merits, ultimately requiring vacatur of the district court's subsequent remand because the erroneous dismissal of the claims removed the nondiverse defendants; in Tramonte v. Chrysler Corp., 136 F.3d 1025, 1027-28 (5th Cir. 1998), the Fifth Circuit held that an erroneous recusal decision that preceded the remand order required vacatur of the remand

13

order; and in <u>Williams v. Beemiller, Inc.</u>, 527 F.3d 259, 264 (2d Cir. 2008), the Second Circuit assessed the "scope of authority of a magistrate judge," a question not requiring review of the merits of the remand order. These cases involved rulings that preceded the remand orders and that were on issues of substantive law wholly unrelated to the merits of the remand. Wright & Kane, <u>supra</u>. Even assuming we agree with these out-of-Circuit cases, which we need not and do not decide, the case before us is different because Colgate's contention attacks the district court's analysis of the merits of the remand. That is, Colgate sought a reconsideration of the merits with a new (complete) record. And that is barred by statute.

The bottom line is that if Congress wanted to carve out an attorney-misconduct exception to the prohibition on review of remand orders, it would have done so: the text of the statute itself contains two such exceptions, 28 U.S.C. § 1447(d), and other statutes contain express exemptions for certain types of cases. <u>E.g.,</u> <u>Blackwater Security Consulting</u>, 460 F.3d at 582-83 n.5 (discussing 25 U.S.C. § 355, which creates an exemption for certain cases involving land restrictions to the Five Civilized Tribes of Oklahoma). But in the absence of any express indication otherwise, "[w]e will not ignore a clear jurisdictional statute in reliance upon supposition of what Congress <u>really</u> wanted." <u>Powerex</u>, 551 U.S. at 237. We take the

14

Supreme Court at its word in its instruction to us that "[a]ppellate courts must take [the § 1447(d)] prescription seriously." Id. at 238. Thus, because remand orders are not reviewable on appeal or otherwise, the district court correctly ruled that it lacked jurisdiction to revisit its remand orders; dressing up the request that it do so as a motion for sanctions does not alter the analysis or the result.

## III.

For the reasons set forth, we DENY AS MOOT Colgate's motion for expedited consideration and we affirm the order of the district court insofar as it ruled that it lacked jurisdiction.

AFFIRMED

15

FLOYD, Circuit Judge, dissenting:

I agree that we cannot vacate the remand orders and return the lawsuits to the district court pursuant to Federal Rule of Civil Procedure 11; but that determination pertains to the type of remedy available, not the threshold issue of whether there is jurisdiction to consider the motion. Because I think that the district court had jurisdiction to entertain Colgate's Rule 11 motion, I would reverse the district court's order denying that motion for lack of jurisdiction. I would also reverse the district court's denial of Colgate's Rule 60(b)(3) motion for lack of jurisdiction insofar as vacating the remand orders does not require any prohibited "review" of those orders. Further, because the district court indicated how it would have ruled if it thought that it had jurisdiction, I would reach the merits of Colgate's motions on appeal. I respectfully dissent.

## I.

To fully grasp the gravity of plaintiffs' shifty positions and counsel's misrepresentations in the district court, a more detailed recitation of the facts is necessary. The majority provided less than two pages of facts and glossed over the written declarations made by plaintiffs while the lawsuits were removed to federal court. I therefore feel duty-bound to shed more light on plaintiffs' assertions that form the very basis of Colgate's motions and this appeal beyond the general statement

16

that, "After removal, the plaintiffs' lawyers moved to remand the case to state court, arguing that they had viable claims against the nondiverse defendants."  <u>Ante</u> at 5.

After Colgate removed Barlow's and Mosko's cases to federal court, plaintiffs' counsel[1] represented the following in a motion for remand in Barlow's case:

> [T]here is some circumstantial evidence to suggest Ms. Barlow could possibly have been exposed to asbestos-containing products while working at RMR Corporation. . . . The evidence is certainly circumstantial, but it cannot be said that there is no possibility that a claim could be successfully proven against any of the non-diverse defendants.

(J.A. 106.)  Based on the above representations, the district court (Judge Nickerson) remanded Barlow's case to state court. Importantly, the district court relied solely on the claim that Barlow was exposed to asbestos at RMR Corporation: "Barlow argues that her joinder of the in-state defendants was not fraudulent because there remains a possibility that she was

---

[1] I use "plaintiffs' counsel" to refer to both Barlow's attorney and Mosko's attorney because their attorneys are the same person, or at least hale from the same law firm.  Although different attorneys from the Law Offices of Peter G. Angelos represented Barlow and Mosko at different stages of litigation (e.g., Jennifer Lilly signed Barlow's and Mosko's respective motions for remand in federal court, but Thomas Kelly signed Barlow and Mosko's joint motion for severance of their cases from a first consolidated trial group and for consolidation of their cases into a second trial group with two different cases), Barlow and Mosko were at all times represented by the same person for the same or similar matters in their separate cases and were represented by the same person when matters were argued on their behalves together.

17

exposed to asbestos while working at RMR Corporation[.] . . . As a result, the Court finds that joinder of the in-state defendants here was not fraudulent[.]" (Id. at 368.)

Similarly, in Mosko's case, plaintiffs' counsel represented the following in the motion for remand:

> [G]iven the extent of work that [Mosko] recalled being done in the [Department of Agriculture] building [her place of employment for twenty-eight years], it was certainly plausible at the time that [Mosko] filed her complaint that local defendants should be implicated. . . . In fact, Plaintiff's counsel do have some circumstantial evidence that Mrs. Mosko may have been exposed to asbestos at the Department of Agriculture in the form of invoices [from an in-state defendant].

(Id. at 247.) Based on the above representations, the district court (Judge Quarles) remanded Mosko's case to state court. Importantly, the district court relied solely on the claim that Mosko was exposed to asbestos at the Department of Agriculture (DOA) building: "Mosko has shown more than a 'glimmer of hope' of recovering against . . . an in-state defendant[] for exposure during the renovations to the DOA building. Therefore, removal was improper." (Id. at 358.)

The remand orders in Mosko's and Barlow's cases were handed down on September 21, 2012, and November 1, 2012, respectively. Just eight days after the remand in Barlow's case, plaintiffs filed a joint motion to sever their cases from a consolidated trial group for which trial was scheduled for March 12, 2013, and to consolidate their cases with two other asbestos-related

18

cases into a separate trial group.  See supra note 1.  Colgate opposed this motion on the basis that all lawsuits should proceed separately because the alleged other sources of asbestos (i.e., sources other than Cashmere Bouquet, such as the plaintiffs' individual workplaces) are so different that Colgate could not receive a fair trial in a consolidated proceeding.  In reply to Colgate's opposition, plaintiffs made the following statements, which directly contradict their representations that formed the bases of the remand orders:

> [Plaintiffs] allege exposure to asbestos-containing Cashmere Bouquet power products only and do not allege exposure to any other asbestos, asbestos-containing products or asbestos-containing dust in any other form. . . . Colgate attempts to highlight alleged differences in Plaintiffs' worksites and occupations as well as their alleged exposures to [other] asbestos-containing products.  However, neither Plaintiffs' worksites nor their occupations are relevant to this consolidation because each of the Plaintiffs were exposed, in their homes, to asbestos-containing Cashmere Bouquet only. . . . The occupations or worksites of the Plaintiffs should not affect the consolidation of these cases for trial because not one of the Plaintiffs testified that they were exposed to asbestos as a result of their employment. . . . Neither were any Plaintiffs exposed to asbestos at any place of residence or secondarily through any family member. . . . In short, there is absolutely no evidence to indicate or even suggest that the Plaintiffs were exposed to asbestos in any form other than Cashmere Bouquet.

(J.A. 474–76 (paragraph breaks omitted) (emphases added).)

This last statement in particular represents a 180-degree departure by plaintiffs' counsel from statements made while the

19

cases were removed to federal court, and Colgate's lawyers were not the only ones who were "[i]rritated by [plaintiffs'] change in tune." Ante at 6. At the post-remand hearing in state court regarding plaintiffs' motion for severance and consolidation, Judge Glynn recognized the bait-and-switch that occurred in federal court and admonished plaintiffs' counsel, stating, "I can't believe you actually told Judge Nickerson and Judge Quarles one thing and tell me another." (J.A. 494.) Judge Glynn then posed the following question to plaintiffs' counsel: "It is a one-defendant case, right?" Counsel answered, "Yes." (Id.) Judge Glynn and plaintiffs' counsel then engaged in the following exchange:

> THE COURT: So you told [Judges Quarles and Nickerson] in the U.S. District Court that you were contending [that] there was no viable claim against any of these [in-state] defendants?
> MR. KELLY: All we had to prove in federal court is that there was a glimmer of hope. . . .
> THE COURT: So once the case came back here [to state court], the glimmer disappeared?
> . . .
> MR. KELLY: The glimmer is in federal court. What we have here is what plaintiffs testified to. . . . The federal court is well aware of that. We didn't tell the federal court anything that they didn't know. We didn't tell the federal court anything different than what we put in our pleadings here. . . .
> THE COURT: What exactly did you tell [the federal judges]? You told them you filed a claim against in-state defendants?
> MR. KELLY: . . . We recited how—what possibility there was that each [plaintiff] might have been exposed to the products of a Maryland defendant.
> THE COURT: What was the possibility that you recited?

20

MR. KELLY:  I just told you.  Ms. Mosko worked at the FDA. . . . But—so there is the possibility.  But the reality is—and the federal court knew that—is that she said before it was removed, I wasn't exposed at the FDA.  I wasn't exposed at any location other than the houses where I used Cashmere Bouquet.  I mean, nothing was held secret from the federal court.  To suggest other wise is wrong.

(Id. at 494–95 (emphasis added).)

Mr. Kelly's statement above that plaintiffs "didn't tell the federal court anything different than what [plaintiffs] put in [their] [post-remand] pleadings" is squarely refuted by comparing the statements made in plaintiffs' motions to remand and the statements made in plaintiffs' joint motion for severance and consolidation.  As recited above, in one instance, after the case was removed, Ms. Lilly proclaimed that, "[T]here is some circumstantial evidence **to suggest** [that] Ms. Barlow could possibly have been exposed to asbestos-containing products while working at RMR Corporation," (id. at 106 (all emphasis added)), and "Plaintiff's counsel do have some circumstantial evidence that Mrs. Mosko may have been exposed to asbestos at the Department of Agriculture," (id. at 247 (emphasis added)).  Yet, on remand, Mr. Kelly averred that, "there is absolutely no evidence to indicate or **even suggest** that the Plaintiffs were exposed to asbestos in any form other than Cashmere Bouquet." (Id. at 476 (all emphasis added.)  What is worse is that the respective district court judges based their remand decisions

21

precisely (and solely) on counsel's factual misrepresentations. (See id. at 358 ("Mosko has shown more than a 'glimmer of hope' of recovering against . . . an in-state defendant[] for exposure during the renovations to the DOA building. Therefore, removal was improper." (emphasis added)); id. at 368 ("Barlow argues that her joinder of the in-state defendants was not fraudulent because there remains a possibility that she was exposed to asbestos while working at RMR Corporation[.] . . . As a result, the Court finds that joinder of the in-state defendants here was not fraudulent[.]" (emphasis added)).) In other words, the bait-and-switch worked.

Colgate then moved in the district court for relief from the plaintiffs' (now-confirmed) intentional misrepresentations that were perpetrated upon the district judges while the cases were removed. In particular, Colgate sought relief pursuant to Rule 11 and asked that the district court sanction plaintiffs' attorneys by imposing monetary penalties, referring them to the state bar, and awarding to Colgate any other relief that the district court deemed appropriate. The nearly identical motions in Barlow's and Mosko's separate cases were consolidated before Judge Nickerson. After a hearing on the motions, Colgate also moved pursuant to Rule 60(b)(3) as a supplement to its Rule 11 motion. In its Rule 60(b)(3) motion, Colgate sought vacatur of the remand orders.

22

On June 26, 2013, Judge Nickerson issued an order denying Colgate's motions. Although the district court characterized the allegations in the motions as "substantial," (id. at 712), and acknowledged that the different statements by plaintiffs' counsel "appear to be in sharp conflict" and that such conflict is "troubling," (id. at 1106), the court concluded that it did not have jurisdiction to rule on the motions. This appeal followed.

Having provided a more comprehensive account of the facts, I will now explain why I disagree with the majority regarding the district court's jurisdiction to consider Colgate's motions. Then, because the district court indicated how it would have ruled if it had jurisdiction, I will explain why I would reverse the district court's would-be denials of Colgate's motions.

## II. Jurisdiction

Although Colgate's Rule 11 motion and Rule 60(b)(3) motion seek relief based on the same misconduct, the motions require separate jurisdictional analyses. Accordingly, I address the district court's jurisdiction regarding each motion in turn.

### A. Rule 11

Although the majority's research led the majority to the conclusion that "no court has ever embraced the argument Colgate puts forward," ante at 9, my research shows otherwise (as does examining the record, namely, Colgate's motion for sanctions—one

23

of the two motions underlying this appeal).  In fact, and <u>au contraire</u> to the majority's assertion, it appears that every federal court that has addressed the issues of (1) whether district courts retain jurisdiction to impose sanctions after remand to state court and (2) whether appeals courts can review such decisions regarding sanctions, has answered those questions affirmatively.[2]  <u>Desert Sch. Fed. Credit Union v. Johnson</u>, 473

---

[2] To the extent that the majority's statement that "no court has ever embraced the argument Colgate puts forward," <u>ante</u> at 9, is narrowed to focus on Colgate's request for vacatur of the remand orders and reinstatement of federal jurisdiction <u>as a Rule 11 sanction</u>, I agree with the majority's assertion.  But vacatur pertains to the <u>type</u> of remedy/relief sought by Colgate, not the threshold issue of whether the district court had jurisdiction to consider Colgate's Rule 11 motion in the first instance.  Although the district court appears to think that vacatur is the only relief that Colgate now seeks, (<u>see, e.g.</u>, J.A. 1106 ("A hearing was held on [the sanctions] motions . . . and there, [Colgate] clarified that the relief sought was for this Court to vacate, or strike, its remand orders."); <u>id.</u> ("[Colgate] clarified in the hearing that the only 'sanction' being sought was for the Court to strike the orders of remand.")), I could not find any statement in the transcript from the motions hearing wherein Colgate disavowed or otherwise withdrew its written prayers for any other (nonjurisdictional) relief (e.g., monetary penalties and referral of plaintiffs' counsel to the state bar).  Moreover, I have a very difficult time believing that Colgate's lawyers abandoned their quest for attorneys fees relating to what they believe to be fraudulently obtained remand orders.  But regardless of whether Colgate did narrow the relief that it seeks, the specific remedy sought pursuant to Rule 11 does not dictate whether the court has jurisdiction to consider the motion in the first place.  It is wrong for the majority to leapfrog over the antecedent question only to look back and claim that the district court lacked jurisdiction to consider the relief sought in Colgate's motion because of the very relief sought in Colgate's motion.  This bootstrapping approach is, quite simply, not the law.

F. App'x 804 (9th Cir. 2012) (cited by Colgate; "[T]he district court had jurisdiction to impose Rule 11 sanctions in the amount of attorney's fees even after remanding the case to state court."); Bryant v. Britt, 420 F.3d 161, 164 (2d Cir. 2005) (per curiam) (cited by Colgate; "[T]he district court was not deprived of jurisdiction to resolve the collateral issue of Rule 11 sanctions by virtue of its earlier order remanding the suit."); Midlock v. Apple Vacations W., Inc., 406 F.3d 453 (7th Cir. 2005) (affirming Rule 11 sanctions imposed subsequent to a post-remand hearing); Lazorko v. Penn. Hosp., 237 F.3d 242, 247 (3d Cir. 2000) ("Although the District Court relinquished jurisdiction over this case when it either dismissed or remanded all the claims before it, it still had jurisdiction to order sanctions."); Miranti v. Lee, 3 F.3d 925, 927 (5th Cir. 1993) ("There is no question but that if an order of sanctions had been entered under Rule 11 . . . , we would have jurisdiction to review it despite the statutory limitation on our review of the order of remand."); Vatican Shrimp Co. v. Solis, 820 F.2d 674, 680 n.7 (5th Cir. 1987) ("Although 28 U.S.C. § 1447(d) precludes our review of the order of remand, it does not shield the subsidiary issue of Rule 11 sanctions from appellate review. . . . [O]ur review on the merits of the Rule 11 sanctions is distinct and separable from a review on the merits of the order of remand."); e.g., Pisciotta v. Dobrynina, No. 08-CV-5221, 2009

25

WL 1913393, at *2 (E.D.N.Y. July 2, 2009) ("On January 21, 2009, the parties appeared for oral argument before the Court [regarding the removal notice]. The next day, the Court . . . remand[ed] the underlying action to state court but retain[ed] jurisdiction to consider sanctions under Rule 11 and costs and fees under § 1447(c)." (citing Bryant, 420 F.3d at 162)); Creek Ventures, LLC v. World Parts, LLC, No. 01-CV-89C, 2004 WL 1166642, at *3 (W.D.N.Y. Apr. 14, 2004) ("The court notes that it retains continuing jurisdiction over the motion for sanctions, despite the remand to state court."); Park Nat'l Bank of Houston v. Kaminetzky, 976 F. Supp. 571, 573 n.2 (S.D. Tex. 1996) ("Although this Court does not have jurisdiction over the merits of the remanded action, the Court retained jurisdiction to impose sanctions, costs, and fees."); see also Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 141 (2d Cir. 2002) ("Although the district court lacked jurisdiction to decide the merits of the underlying action, it retained the power to determine collateral issues, such as the appropriateness of [Rule 11] sanctions."); Olcott v. Del. Flood Co., 76 F.3d 1538, 1553 (10th Cir. 1996) ("Among the collateral issues a federal court may consider after an action is no longer pending is a Rule 11 sanction."); Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks, 915 F.2d 1301, 1303 (9th Cir. 1990) ("[E]ven if a court does not have jurisdiction over an underlying action, it may

26

have jurisdiction to determine whether the parties have abused the judicial system and whether sanctions are appropriate to remedy such abuse.").

This Court's own precedent aligns with the chorus of cases cited above, thus exposing as hollow the majority's far-reaching statement that "entry of an order remanding a case to state court divests the district court 'of all jurisdiction in [the] case and preclude[s] it from entertaining any further proceedings of any character[.]'" Ante at 9 (first and second alterations in original) (quoting Three J Farms, Inc. v. Alton Box Board Co., 609 F.2d 112, 115 (4th Cir. 1979)). In ITT Industrial Credit Co. v. Durango Crushers, Inc.—a case decided eight years after Three J Farms—this Court affirmed the district court's award of attorneys' fees to the plaintiff as a sanction based on the defendants' improper removal of the case to federal court. 832 F.2d 307, 308 (4th Cir. 1987). Specifically, this Court stated the following:

> Ordinarily, a district court may not award attorneys' fees absent express Congressional authorization. Exceptions to the "American Rule," whereby each party pays its own attorney's fees, are matters of legislative providence. . . . [H]owever, courts do have inherent power to award attorney's fees against a party who has acted in bad faith. The limited authority of the district courts to award fees as a sanction for a removal taken in bad faith is widely recognized. Although § 1447(c) itself conveys no power on the district courts to award attorneys' fees, the district court did not err in awarding attorney's fees . . . because the[] removal petition was so

27

> patently without merit that the inescapable conclusion
> is that it was filed in bad faith.

Id. (emphasis added) (citations omitted) (internal quotation marks omitted).[3]

To be absolutely sure, the opinion in Durango Crushers is ambiguous about (1) whether the district court ordered sanctions subsequent to remand, as would be the case here (as opposed to in conjunction with remand), and (2) whether the court ordered sanctions sua sponte or pursuant to a post-remand motion or request. However, this Court's subsequent decision in Anton Leasing, Inc. v. Engram, 846 F.2d 69 (4th Cir. 1988) (per curiam) (unpublished table decision)—handed down less than six months after Durango Crushers—purges any lingering doubt about district courts' ability to order sanctions after remand.[4] In Engram, the district court granted the plaintiff's motion to remand the case to state court for failure to remove the case to the proper venue. Prior to the remand, the plaintiff requested costs and fees. "[The defendant] failed to respond to [the

---

[3] At the time that this Court decided Durango Crushers, the then-current (1982) version of 28 U.S.C. § 1447(c) did not include attorneys' fees as part of the "just costs" available based on an improvident removal. See Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp., 636 F.3d 971, 974 (8th Cir. 2011).

[4] Two of the three judges who were on the panel for Durango Crushers—Judge Wilkinson (author) and Judge Chapman—were also panel members for Engram.

28

plaintiff's] motion, and the district court granted [the] . . . motion to remand and dismissed the case from the docket. The court awarded no costs or fees." Id. Then, after remand, the defendant filed a motion in the district court to transfer venue to cure the lack of subject jurisdiction. The plaintiff opposed this motion and again requested attorneys' fees, which the district court awarded. The defendant appealed.

On appeal, this Court held that, "While the district court was without jurisdiction to rule on the transfer motion, . . . the court had jurisdiction to review the [post-remand] request for just costs and that that part of the order is appealable." Id. (citing News-Texan, Inc. v. City of Garland, 814 F.2d 216, 220 (5th Cir. 1987), and Vatican Shrimp Co., 820 F.2d at 680 n.7—both Rule 11 cases). Importantly, and like in Durango Crushers, this Court characterized the attorneys' fees award as a sanction. Id. (citing Durango Crushers and noting that the then-current version of § 1447(c) "convey[ed] no power on the district courts to award attorneys' fees"); see supra note 3.

The myriad cases cited above from other circuit courts, district courts, and this Court are just appetizers, for the Supreme Court itself has spoken on the propriety of Rule 11 sanctions ordered (1) after a case has been dismissed and (2) even when a district court was without jurisdiction in the first instance. The first of these two cases is Cooter & Gell

29

_v. Hartmarx Corp._, 496 U.S. 384 (1990). There, the plaintiff filed a complaint but then dismissed the complaint pursuant to Rule 41(a)(1)(i) after the defendant moved for dismissal and for Rule 11 sanctions because of the baseless allegations in the complaint. _Id._ at 389. The district court heard oral argument on the Rule 11 motion prior to dismissal but dismissed the case without ruling on the motion. _Id._ More than three-and-a-half years later, the district court granted the defendants' Rule 11 motion. _Id._ at 389-90. After losing on appeal, the plaintiff's law firm petitioned the Supreme Court, arguing that the district court was without jurisdiction to order sanctions.

The Supreme Court held that the district court did have jurisdiction to sanction plaintiffs' counsel. Specifically, the Court stated that "a voluntary dismissal does not expunge the Rule 11 violation," and "a court must have the authority to consider whether there has been a violation of [Rule 11] regardless of the dismissal of the underlying action." _Id._ at 395; _see id._ ("It is well established that a federal court may consider collateral issues after an action is no longer pending."); _see also id._ at 398 ("The filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction."). Although the underlying case in _Cooter & Gell_ became "no longer pending" before the district

30

court due to the plaintiff's voluntary dismissal, numerous circuit courts have applied Cooter & Gell's holding to cases that were "no longer pending" due to remand to state court. E.g., Desert Sch. Fed. Credit Union, 473 F. App'x 804 ("The Supreme Court has long held that a district court retains jurisdiction to impose Rule 11 sanctions even after a case has been dismissed. . . . Thus, the district court had jurisdiction to impose Rule 11 sanctions in the amount of attorney's fees even after remanding the case to state court." (citing Cooter & Gell)); Bryant, 420 F.3d at 164 ("Nothing in Cooter & Gell limits its observations concerning collateral jurisdiction over Rule 11 motions to dismissals under Fed. R. Civ. P. 41(a)(1).").

The second Supreme Court case that directs the conclusion that the district court had jurisdiction to consider Colgate's Rule 11 motion for sanctions is Willy v. Coastal Corp., 503 U.S. 131 (1992) (9-0) (Rehnquist, C.J.). In Willy, the petitioner sued the respondent in state court and the respondent removed the case to federal court. Id. at 132. Over the petitioner's objection, the district court concluded that it had subject matter jurisdiction and subsequently granted the respondent's motion to dismiss for failure to state a claim. Id. at 132–33. At the same time, the district court granted the respondent's motion for Rule 11 sanctions against the petitioner and his attorney for certain filings made in the district court, and the

31

petitioner appealed. Id. at 133. The appeals court determined that federal subject matter jurisdiction over the case was improper and reversed the district court's order dismissing the claims with instructions to remand the case to state court. Id. However, the appeals court did not reverse the sanctions award.

Neither did the Supreme Court. Instead, the Court stated that, although "[a] final determination of lack of subject-matter jurisdiction of a case in a federal court . . . precludes further adjudication of it[,] . . . such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." Id. at 137. Citing Cooter & Gell, the Court reiterated that Rule 11 sanctions are "collateral to the merits" of an action, id. at 138, and that "[t]he interest in having rules of procedure obeyed . . . does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction," id. at 139. Like those circuit court decisions applying Cooter & Gell, appeals courts have likewise relied on Willy for the proposition that district courts maintain jurisdiction to order Rule 11 sanctions after remand. E.g., Bryant, 420 F.3d at 164 ("[T]he Supreme Court . . . has . . . held that district courts have jurisdiction over Rule 11 motions where the district court has remanded a case to state court. It follows that in [appellant]'s case the district

32

court was not deprived of jurisdiction to resolve the collateral issue of Rule 11 sanctions by virtue of its earlier order remanding the suit." (citing Willy)); see also Lazorko, 237 F.3d at 247.

In view of the above, the district court had, at a minimum, jurisdiction to consider Colgate's Rule 11 motion for sanctions and to fashion appropriate relief, if any; the law could not be more clear on this point. Jurisdiction is a court's ability to consider a motion in the first instance, not the court's ability to actually grant the relief requested therein. The majority misunderstands this basic legal distinction and, in reaching the opposite conclusion, maroons itself on an island all alone, thereby creating a cosmic circuit split and contravening Supreme Court precedent and this Court's precedent. Indeed, it appears that it is the majority's rigid position that is the "anomaly in federal jurisdiction." Ante at 9.

## B. Rule 60(b)(3)

"Exactness in the use of words is the basis of all serious thinking." Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 546 (1947) (citation omitted) (internal quotation marks omitted). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992). "[U]nless otherwise

defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979). These are fundamental tenets for drafting and interpreting legislation, and yet the majority spurns such bedrock principles by failing to appreciate the distinction between "vacating" an order and "reviewing" an order, only the latter of which is prohibited by 28 U.S.C. § 1447(d).

The Eleventh Circuit recognized the distinction noted above in Aquamar, S.A. v. Del Monte Fresh Produce N.A. and explained it as follows:

> Vacatur of a remand order does not necessarily constitute a forbidden "review" of the remand decision. To "review" an order, a court must do more than merely cancel it; it must, to some extent, examine it and determine its merits. A "review" is a "reconsideration; second view or examination; revision; consideration for purposes of correction." Black's Law Dictionary 1320 (6th ed. 1990). A vacatur does not necessarily implicate this sort of examination.
> If we order the district court to vacate an order for reasons that do not involve a reconsideration or examination of its merits, then we have not "reviewed" the order, and therefore have not fallen afoul of section 1447(d)'s prohibition on review.

179 F.3d 1279, 1288 (11th Cir. 1999) (citing U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 22–23 (1994)); see also Tramonte v. Chrysler Corp., 136 F.3d 1025, 1028 (5th Cir. 1998) ("[V]acatur of the remand order would . . . not constitute a review of the merits of that order, prohibited by 28 U.S.C. § 1447(d)."). The majority is speedy to attempt to distinguish

34

<u>Aquamar</u> and <u>Tramonte</u> on their facts and the reasons for vacatur in those cases, but is conspicuously silent as to why the vacate/review distinction ceases to apply in this case, which deals with the same statutory provision. Indeed, and just like the <u>Aquamar</u> court, this Court has several times relied on dictionaries to interpret statutes when the statutes' words were not defined therein. <u>See, e.g.</u>, <u>Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.</u>, 718 F.3d 249, 258–59 & n.10–17 (4th Cir. 2013) (Davis, J.); <u>United States v. Hampton</u>, 628 F.3d 654, 660 (4th Cir. 2010) (Davis, J.); <u>FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC</u>, 626 F.3d 752, 756 (4th Cir. 2010) (Davis, J.); <u>Torres v. O'Quinn</u>, 612 F.3d 237, 243, 245–46 (4th Cir. 2010) (Davis, J.); <u>see also</u> <u>United States v. Perez-Perez</u>, 737 F.3d 950, 955 (4th Cir. 2013) (Davis, J., concurring); <u>David v. Alphin</u>, 704 F.3d 327, 339 (4th Cir. 2013) (Davis, J.). This Court should not treat this case and this statute any differently, and to dismiss the distinction as mere semantics runs afoul of long-standing statutory interpretation principles.

The majority relies heavily on <u>In re Lowe</u>, 102 F.3d 731 (4th Cir. 1996), and the flowery "one shot"-language contained therein, but without solid justification for doing so on these facts and without any discussion of the particulars of that case. In <u>Lowe</u>, the district court remanded the case due to lack of complete diversity between the parties, and the defendants

35

moved for "reconsideration"—not vacatur—of the remand order. Id. at 732–33. The district court granted the motion, and the plaintiff petitioned this Court for a writ of mandamus. Id. at 733. This Court framed the "principal issue" in the appeal as "whether the district court exceeded its jurisdiction when it reconsidered its remand order." Id. at 733 (emphasis added). This Court then determined that, "[i]ndisputably, 'otherwise' in § 1447(d) includes reconsideration by the district court." Id. at 733–34 (emphasis added).

Lowe's holding is consistent with the holdings of several factually similar cases (i.e., cases wherein a party asked for reconsideration of a remand order), all of which I think were correctly decided in view of § 1447(d)'s bar on "review." See, e.g., Gravitt v. Sw. Bell Tel. Co., 430 U.S. 723 (1977) (per curiam) (reversing judgment where the court of appeals "ordered the District Court to vacate its remand order because the latter had employed erroneous principles in concluding that it was without jurisdiction"); Agostini v. Piper Aircraft Corp., 729 F.3d 350, 355 (3d Cir. 2013) ("[W]e hold that we do not have jurisdiction to review an order denying a motion to reconsider a remand order."); Harris v. Blue Cross/Blue Shield of Ala., Inc., 951 F.2d 325, 326, 330 (11th Cir. 1992) (addressing the issue of "whether the district court had jurisdiction to 'reconsider' its order remanding the case to state court" and concluding that it

36

did not). Fortunately for Colgate, however, the case before the Court today is not Lowe, Gravitt, Agostini, or Harris insofar as vacatur does not require review or reconsideration of a ruling. See Aquamar, 179 F.3d at 1288; Tramonte, 136 F.3d at 1028.

Contrary to the majority's claim that "Colgate[] seek[s] to draw us into the merits . . . of the district court's order," ante at 8, Colgate never once argues that remand was wrong based on the facts that were presented to the district court at the time the cases were removed. Of course, Colgate argues that the joinder of certain parties has now been confirmed as fraudulent; but this is a separate issue from the question of whether remand was proper under the facts as plaintiffs' counsel originally presented them (i.e., that all Maryland defendants were properly joined). The majority couches Colgate's argument as "attacking the district court's analysis of the merits of the remand," id. at 14, but has not cited to a single instance—because there is not one—where Colgate claims that the district court erred by remanding the cases based on the facts as plaintiffs' counsel represented them. Colgate's real argument, which the majority either simply misunderstands or chooses to ignore and remold into a new argument, is that plaintiff counsel's representations were not a truthful portrayal of the actual facts of the case; Colgate therefore attacks the manner by which the plaintiffs secured the remand orders, not the merits or correctness of the

37

orders themselves.  Compare ante at 12 ("Colgate's argument that it is not seeking 'review' is simply incorrect because its request necessarily requires a merits review of the remand orders."), with Colgate's Reply Br. at 3 ("The instant motions do not seek relief on the ground that the Remand Orders were substantively incorrect.  Instead, they contend that the orders were procured unfairly through misconduct.  Thus the 'review' requested is of counsel's conduct—not the orders themselves." (third emphasis added)).

In view of the proper understanding of Colgate's argument and the fact that Colgate never once argues that the district court erred in remanding the cases—only that that the district court erred in subsequently denying Colgate's post-remand motions—§ 1447(d) does not prohibit this Court from vacating the remand orders pursuant to Rule 60(b)(3) if it is determined that such relief is warranted.  In Schultz v. Butcher, 24 F.3d 626 (4th Cir. 1994), this Court clarified that Rule 60(b)(3) does not pertain to the merits of a judgment, order, or proceeding, but rather ensures the integrity of the manner by which such ruling was procured. There, the plaintiff's lawyer deliberately withheld a document that fell plainly within the scope of one of the defendant's interrogatories.  Id. at 629.  The district court (by a bench trial) ruled in favor of the plaintiff, and the defendant moved post-judgment pursuant to Rule 60(b)(3) for,

inter alia, a new trial, alleging that the plaintiff concealed the pertinent document and that the absence of that document prejudiced the defendant. Id. at 630. The district court denied the motion because "the report was not newly discovered evidence and . . . would not have altered the court's determination as to liability." Id. at 631.

This Court reversed on appeal and explained that

> [t]he "newly discovered evidence" provision of Rule 60(b)(2) is aimed at correcting an erroneous judgment stemming from the unobtainability of evidence. Consequently, a party seeking a new trial under Rule 60(b)(2) must show that the missing evidence was "of such a material and controlling nature as [would] probably [have] change[d] the outcome" . . . In contrast, Rule 60(b)(3) focuses not on erroneous judgments as such, but on judgments which were unfairly procured.

Id. at 631 (alterations in original) (emphasis added) (quoting Anderson v. Cryovac, Inc., 862 F.2d 910, 924 n.10 (1st Cir. 1988)); see also Square Constr. Co. v. Wash. Metro. Area Transit Auth., 657 F.2d 68, 72 (4th Cir. 1981) ("Setting aside a judgment under [Rule] 60(b)(3) does not require that the [fraud, misrepresentation, or misconduct] be sufficient to alter the district court's judgment[.]"). As noted above, Colgate does not argue that the reasoning of the remand orders was erroneous based on the facts as plaintiffs' counsel presented them when the cases were removed; rather, Colgate argues only that the orders were "unfairly procured" due to the contortion of facts

39

and evidence supporting a claim against the in-state defendants. The law recognizes such factual manipulation as fundamentally unfair and provides to a party the opportunity to seek relief pursuant to Rule 60(b)(3). Schultz, 24 F.3d at 631 ("[W]rongful [withholding] of . . . material makes it inequitable for the withholder to retain the benefit of the [judgment][.]").

In Cooter & Gell, the Supreme Court stated that, "If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to stop, think and investigate more carefully before serving and filing papers." 496 U.S. at 398 (citation omitted) (internal quotation marks omitted). The same is true in the context of a remand order: if a litigant could flout his duty of candor before a district court and secure remand by misrepresentation, knowing that such remand is never subject to vacatur, he would lose all incentive to present the facts of a case honestly to the court during removal. Righting this wrong and protecting the sanctity and integrity of judicial proceedings overrides the value of any purported finality of a remand order.[5] Green v. Foley, 856 F.2d

---

[5] It is ironic that the majority would lean on the notion that "it is manifest that the law favors finality." Ante at 9; see Whiteside v. United States, __ F.3d __, No. 13-7152, 2014 WL 1364019, at *11 (4th Cir. Apr. 8, 2014) (Davis, J., concurring) (criticizing one of our colleagues for "prostrat[ing] . . . at the altar of finality" and for "favor[ing] what's 'finished' over what's 'right'").

660, 667 (4th Cir. 1988) ("[T]he policy of deterring misconduct which threatens the fairness and integrity of the fact finding process must outweigh considerations of finality. Any other result would reward [a litigant's] wrongful acts by permitting him to retain the benefit of those acts . . . in derogation of the proper function of the federal courts." (emphasis added) (citation omitted) (internal quotation marks omitted)).

Finally, before proceeding to the merits of Colgate's motions, a word about Powerex Corp. v. Reliant Energy Services, Inc., 551 U.S. 224 (2007), is in order. The majority erects a cathedral around Powerex but, as with Lowe and every other case that the majority relies upon, provides no discussion of the facts—only selective sound bytes in support of its position. In Powerex, two foreign defendants (including Powerex Corp.) and two federal defendants removed a state-law action, claiming that the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1441(d) (authorizing removal by a "foreign state" as defined in the Foreign Sovereign Immunities Act (FSIA)) and 28 U.S.C. § 1442(a) (authorizing removal by federal agencies). Id. at 227–28. The plaintiffs moved to remand the case, and the district court determined that the two federal defendants and one of the foreign defendants were immune from suit, but that Powerex Corp. did not qualify as a "foreign state." Id. at 228. Accordingly, because Powerex Corp. did not satisfy the criteria

for federal jurisdiction pursuant to § 1441(d) and all other defendants were immune from suit, the district court remanded the case. Id. at 228.

Powerex Corp. appealed, arguing that it was "foreign state" for FSIA purposes, and the plaintiffs countered, arguing that the appeal was barred by § 1447(d). The Ninth Circuit held that it "ha[d] jurisdiction to review the underlying merits of the district court's substantive rulings on immunity and sovereign status[,]" California v. NRG Energy, Inc., 391 F.3d 1011, 1022 (2004) (emphasis added)—or in the words of the Supreme Court, the Ninth Circuit held that § 1447(d) "did not preclude it from reviewing substantive issues of law that preceded the remand order," Powerex, 551 U.S. at 228 (emphasis added). The Ninth Circuit then affirmed the district court's ruling that Powerex Corp. was not a "foreign state" for purposes of § 1441(d). Id.

The Supreme Court subsequently vacated that decision and remanded the case with instructions to dismiss the appeal for lack of jurisdiction. The Court reasoned that "[n]othing in the text of § 1447(c) supports the proposition that a remand for lack of subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance." Id. at 230. Specifically, the Court held that "§ 1447(d) bars appellate consideration of [Powerex Corp.]'s claim that it is a foreign state for purposes of the FSIA." Id. at 239.

42

At the end of this discussion of Powerex, one might be left wondering, "Well, so what? How does Powerex apply here, where Colgate does not claim that the district court erred as a matter of law in granting plaintiffs' motions for remand and does not seek appellate review of the merits of the remand orders?" And that is precisely the point—Powerex does not apply to this case insofar it is no different from Lowe, Gravitt, Agostini, and Harris (except that Powerex Corp. did not seek reconsideration of the remand order by the district court, but instead jumped straight to the court of appeals for review of the district court's decision on the merits). I belabor the details of Powerex merely to show that the majority's quoting here and there of the case without any facts is nothing but an attempt to distract and divert attention away from the critical distinction between "vacatur" and "review", which goes wholly unaddressed by the majority.[6] Powerex is a case about the jurisdiction of an appeals court to review a district court's reasoning on issues

_____

[6] Well, almost unaddressed—the majority does state that Colgate's proffered review/vacatur distinction fails "because it seeks to relitigate the merits of an issue already litigated." Ante at 13. But the majority has not explained how relitigating an issue using completely different facts and, more importantly, without referring back to the first remand orders disposing of that issue, in any way requires reviewing the first orders. By engaging in such linguistic gymnastics, the majority declares that "review" now also means "to litigate anew on a blank slate," thus expanding its definition far beyond Mr. Webster's, Mr. Garner's, and Congress's wildest imaginations.

43

of substantive law; it is not a case about the jurisdiction of an appeals court to vacate an order procured by alleged fraudulent representations and attorney misconduct. Indeed, if Powerex does anything, it underscores the difference between vacatur and review insofar as the Supreme Court never reached the merits of ("reviewed") the principal issue for which it granted certiorari—"whether, under [FSIA], [Powerex Corp.] is an 'organ of a foreign state or political subdivision thereof,'" id. at 226 (citation omitted)—because it vacated the appeals court's decision on jurisdictional grounds.[7]

---

[7] It is curious that the statement, "If Congress wanted to carve out an attorney-misconduct exception to the prohibition on review of remand orders, it would have done so[,]" ante at 14, appears in an opinion that places such heavy reliance on Powerex when all nine Justices in Powerex recognized that § 1447(d) has exceptions that were not carved out by Congress. Powerex, 551 U.S. at 229 ("[W]e have interpreted § 1447(d) to cover less than its words alone suggest."); id. at 240 (Breyer, J., dissenting) ("[T]his Court has found exceptions to § 1447's seemingly blanket prohibition [on review]." (citing Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 350–52 (1976), and Osborn v. Haley, 549 U.S. 225, 240–44 (2007))); see also Bujanowski v. Kocontes, 359 F. App'x 112, 113 (11th Cir. 2009) (per curiam) ("Generally, 28 U.S.C. § 1447(d) provides that '[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal.' We have, however, carved out a limited exception in that the appellate court 'may review the merits of a remand order in considering whether the district court abused its discretion by awarding attorneys' fees and costs under 28 U.S.C. § 1447(c).'" (quoting Legg v. Wyeth, 428 F.3d 1317, 1319 (11th Cir. 2005))); In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 587 (4th Cir. 2006) (relied upon by the majority; "Having determined that the order before us was, indeed, predicated upon § 1447(c), and therefore within the purview of § 1447(d), we turn now to a consideration of whether (Continued)

44

In sum, nothing in the plain language of § 1447(d) or courts' interpretation thereof bars vacatur of the district court's remand orders. Although I agree that reconsideration is a subspecies of review, see Lowe, 102 F.3d at 733–34, vacatur, without revisiting the merits of the prior order, is no such cousin or relative.

## III. Merits

Having concluded that the district court had jurisdiction to rule on Colgate's Rule 11 and Rule 60(b)(3) motions, I will now proceed to analyze the merits of those motions. See Liberty Univ., Inc. v. Geithner, 671 F.3d 391, 422 (4th Cir. 2011) (Davis, J., dissenting) ("My good colleagues in the majority hold that the Anti-Injunction Act strips us of jurisdiction in this case. For reasons I explain at length below, I disagree. As I reject the reasoning and the result of the majority's

---

one of the other judicially created exceptions to § 1447(d) applies." (emphasis added)); Nutter v. Monongahela Power Co., 4 F.3d 319, 321 (4th Cir. 1993) ("Although § 1447(d) appears to foreclose any review of remand orders, that limitation is subject to several exceptions." (citing Brannon v. Babcock & Wilcox Co., 940 F.2d 832, 848 (3d Cir. 1991), which held that § 1447(d) does not bar review of remand orders where the district court determines it lacks jurisdiction because the federal statute conferring jurisdiction is unconstitutional)). Although I do not think that we need to carve out any new exception to § 1447(d) because vacatur does not require review and, thus, Colgate's request is outside the reach of the statute, it is nonetheless worth noting that, even if that is what we were doing, we would certainly not be the first court to do so.

45

jurisdictional analysis, I am entitled to reach the merits of appellants' claims."). Although normally all that would be required of this Court at this particular procedural juncture would be to reverse and remand for further consideration on the merits, the district court indicated how it would have ruled if it thought that it had jurisdiction. Specifically, the district court stated that, although there is a "sharp conflict" between plaintiff counsel's statements made while the cases were removed and those statements made subsequent to remand, and that such conflict is "troubling," the statements "are attributable to different attorneys in markedly different litigation contexts," (J.A. 1106); therefore, the court was "not convinced that counsel's conduct is sanctionable," (id.). These statements by the district court were made after the parties had the opportunity to brief whether plaintiff counsel's conduct warranted sanctions and after a hearing was held regarding the same; in other words, the merits of the issue have been fully presented and argued.

In such a situation, this Court has the ability to rule on the merits of Colgate's motions even though the district court technically did not. See Brown & Williams Tobacco Corp. v. FTC, 710 F.2d 1165, 1172–73 & n.3 (6th Cir. 1983) ("The District Court never ruled on [plaintiffs'] two arguments on the merits because the court below erroneously held that it lacked

46

jurisdiction. Rather than remand the case which would entail further delay, we have decided in the interest of judicial economy to reach the merits of this case."). This is especially the case where the proper exercise of discretion could lead to only one outcome and the district court has already shown how it would rule if this Court were to simply remand the case. See United States v. Fenner, 147 F.3d 360, 363 (4th Cir. 1998) ("[W]e need not remand to permit the district court to exercise its discretion [regarding an issue that it did think that it had the authority to decide] if its decision to do so on remand would constitute an abuse of discretion.").

This Court reviews district courts' decisions on Rule 11 and Rule 60(b)(3) motions for an abuse of discretion. Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 150 (4th Cir. 2002) (standard of review for Rule 11 motions); Green, 856 F.2d at 665 (standard of review for Rule 60(b) motions). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Brubaker v. City of Richmond, 943 F.2d 1363, 1374 (4th Cir. 1991). As noted above, the same underlying conduct forms the bases of each of Colgate's respective motions.

47

## A. Rule 11 Sanctions

In relevant part, Federal Rule of Civil Procedure 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(3). Here, Colgate seeks sanctions for plaintiff counsel's averments to Judge Nickerson that "there is some circumstantial evidence to suggest [that] Ms. Barlow could possibly have been exposed to asbestos-containing products while working at RMR Corporation," (J.A. 106), and to Judge Quarles that "Plaintiff's counsel do have some circumstantial evidence that Mrs. Mosko may have been exposed to asbestos at the Department of Agriculture," (id. at 247). Colgate claims that, in view of plaintiff counsel's subsequent statement after remand that "there is absolutely no evidence to indicate or even suggest that the Plaintiffs were exposed to asbestos in any form other than Cashmere Bouquet," (id. at 476), counsel's statements in federal court were without evidentiary support and deceived the district court into ordering remand based on a sham factual record.

48

At the hearing on the motions for sanctions, plaintiffs' counsel claimed that the statements made in federal court were "legal conclusion[s]" and "legal argument[s]," not "factual contention[s]" subject to Rule 11 sanctions. (Id. at 1070-71.) Counsel maintained this purported distinction on appeal, claiming that "[t]he fact that an attorney calls evidence circumstantial, or claims a piece of evidence gives rise to an inference, falls squarely into the category of legal argument." Plaintiffs' Br. at 37. Although I agree that characterizing the type of evidence can, at times, be subject to some legal significance, I strongly disagree that a statement regarding the existence of evidence—be it direct, circumstantial, or some other type—requires application of any law. Evidence exists or it does not exist; this is a binary factual determination.

On appeal, plaintiffs' counsel attempted to backpedal and retreat further from the prior statements made during removal proceedings by framing those statements as follows:

> The truth is that the Plaintiffs in this case never represented to the federal court that it intended to generate evidence against any of the in-state defendants, or even that they would prevail against the in-state defendants. Indeed, such representations would have been irrelevant to the inquiry, because that is not what the federal standard [for remand] requires. Instead, the Plaintiffs argued that there was a possibility that evidence could be generated or a possibility that the Plaintiffs could prevail against the local defendants, and that is all that is required to obtain remand in a fraudulent joinder argument.

49

Id. at 29 (emphasis added on all words but the first "possibility" and the first "could"). This qualification of the previous statements is wholly unavailing and, worse, all but confirms that counsel's prior statements in federal court were misrepresentations. While the cases were removed, plaintiffs did not merely claim that evidence against in-state defendants "could be generated"; rather, counsel told the district court that "there is some circumstantial evidence" and "Plaintiff's counsel do have some circumstantial evidence." (J.A. 106, 247 (emphases added).) In other words, counsel told the district court that such evidence against the in-state defendants was already in the plaintiffs' possession. Insofar as plaintiffs' counsel is on the record as telling the court that plaintiffs had evidence that apparently did not exist, counsel's misconduct is subject to Rule 11. See, e.g., Pope v. Fed. Express Corp., 39 F.3d 1327, 1328 (8th Cir. 1995) (affirming award of Rule 11 sanctions for offering a falsified document into evidence).

Plaintiffs' constant altering of their position to cater to the forum of the day is further demonstrated by Ms. Lilly's statements at the hearing on Colgate's motions for sanctions before Judge Nickerson. There, Ms. Lilly claimed that Mr. Kelly "overstated things" subsequent to remand when he submitted that "there is absolutely no evidence to indicate or even suggest

50

that the Plaintiffs were exposed to asbestos in any form other than Cashmere Bouquet." (J.A. 1092.) Ms. Lilly then asserted, "Yes, there was some evidence[,]" referring to the alleged existence of evidence that Barlow could have been exposed to asbestos at her place of employment and not via Cashmere Bouquet only. (Id.) But even setting aside the existence (or not) of evidence, Mr. Kelly also asserted after remand that Barlow and Mosko "do not allege exposure to . . . asbestos . . . in any other form" other than Cashmere Bouquet. (J.A. 474 (emphasis added).) In other words, notwithstanding the named defendants in the complaint, plaintiffs had no intention to pursue claims against any party but Colgate; Mr. Kelly therefore confirmed that this truly is a "one-defendant" case, (see J.A. 494).

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)) (internal quotation marks omitted)). That is precisely what happened here: first, there was evidence in federal court of other sources of exposure to asbestos when the existence of such evidence was advantageous for defeating complete diversity and obtaining remand; then, just eight days after the remand order in Barlow's case was handed down, there was no such

51

evidence in state court when the lack of any evidence was advantageous for reconsolidating plaintiffs' cases for trial; then, there was again evidence in federal court when Ms. Lilly had to answer for her prior representations made during removal proceedings to avoid being sanctioned. This ping-pong match must come to an end.

Although one might expect a multinational corporation, embroiled in several types of lawsuits around the country and represented by different law firms, to now and again take inconsistent positions without being aware that it has done so (not that doing so is excusable), the constant shifting of positions by the same two lawyers from the same law firm and in the same matters for two individual plaintiffs is unacceptable. Lawyers are mouthpieces for their clients; they do not speak for themselves. Thus, regardless of which lawyer makes an argument on behalf of a client, it is still the client (i.e., party to the lawsuit) who is taking a certain position, and this position cannot change as does the weather in spring whenever it favors the client's instant cause or depending on which lawyer is appearing to represent the client on any given day.

The district court provided no explanation as to why it would not award sanctions other than counsel's statements "are attributable to different attorneys in markedly different litigation contexts." (J.A. 1106.) As explained above, the

52

fact that different lawyers made the statements is wholly irrelevant. Moreover, the fact that the statements were made in different contexts is precisely what makes the misconduct so egregious—one would not expect a party to even attempt such a blatant about-face before the same judge; but plaintiffs' counsel knew that it was making the post-remand statements before a different judge and in a different forum. When this is the case, the consistency of a party's position must be at its pinnacle to ensure the fair adjudication of claims based on prior rulings that impacted those same claims. To not order sanctions on these facts would be an abuse of a district court's discretion. See, e.g., Judin v. United States, 110 F.3d 780, 781 (Fed. Cir. 1997) ("Because we find a clear violation of Rule 11, we hold that the trial court abused its discretion in determining otherwise."); see also Thompson v. RelationServe Media, Inc., 610 F.3d 628, 671 (11th Cir. 2010) (Tjoflat, J., concurring in the appeal and dissenting the cross-appeal) ("[T]he district court necessarily abused its discretion when it denied sanctions. That is, the violations are so clear that no matter what rationale the district court might have had, it abused its discretion when it denied sanctions."); Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 400-03 (6th Cir. 2009) (concluding that the district court abused its discretion for not ordering more severe sanctions because the amount of the

"token sanction" that was ordered was "insufficient to serve Rule 11's deterrent purposes").

Rule 11(c)(1) provides, "If . . . the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  I agree with the majority that we cannot order that the case be returned to district court as a sanction; federal jurisdiction is not a tool by which to ensure deterrence of future misconduct.  But we can compensate Colgate for any attorneys' fees and costs that it has amassed as a result of plaintiffs' shifty positions.  I therefore would sanction the plaintiffs and their counsel by ordering that plaintiffs pay Colgate's attorneys' fees and costs for the following proceedings and any related filings: (1) the original removal proceedings before Judge Nickerson and Judge Quarles; (2) any proceedings in state court subsequent to remand, including the hearing before Judge Glynn; (3) the proceedings in the district court relating to Colgate's motions for sanctions; and (4) this appeal.  Further, I would refer plaintiffs' counsel to the bars of any states in which they are licensed to practice law.

## B.  Rule 60(b)(3) Relief

In Square Construction Co., this Court established a three-pronged test for a moving party to obtain Rule 60(b)(3) relief:

54

the movant must (1) "demonstrate the existence of a meritorious claim or defense"; (2) "prove the misconduct complained of by clear and convincing evidence"; and (3) "demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense." 657 F.2d at 71. "In consideration of these proofs, the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case." Id. In analyzing these factors as applied to this case, Colgate satisfies them all.

First, Colgate demonstrated the existence of a meritorious defense to the remand orders, namely that the Maryland in-state defendants were fraudulently joined. Colgate maintained this position from the time that Colgate filed its notices of removal in the respective state-court actions throughout this appeal. (See, e.g., J.A. 30–31 (Notice of Removal in Barlow's case); id. at 39–40 (Notice of Removal in Mosko's case); id. at 377–78 (Motion for Sanctions in Mosko's case); id. at 530–31 (Motion for Sanctions in Barlow's case)); Colgate's Opening Br. at 18. And just as the district court in Schultz "observed that the [meritorious defense] was a close question" but ultimately denied the plaintiff's Rule 60(b) motion, see 24 F.3d at 630, the district court here similarly observed that plaintiff counsel's statements "appear to be in sharp conflict" and that

55

such conflict is "troubling," (J.A. 1106), even though it likewise denied Colgate's motion.

Second, Colgate proved the misconduct complained of by clear and convincing evidence. Although the burden belongs to Colgate, the contradictory assertions contained in plaintiffs' filings and the statements made by plaintiffs' counsel speak for themselves. See supra at 2–7. Moreover, as demonstrated above, plaintiff counsel's attempts to backpedal and cover their tracks all but confirmed their prior misrepresentations. See supra at 34–37.

Third, counsel's misconduct prevented Colgate from fully presenting its case as to federal jurisdiction. As noted above, the plaintiffs' alleged existence of evidence against the in-state defendants is the precise and only reason that the respective district judges granted plaintiffs' motions for remand. (See id. at 358, 368); supra at 7.

Lastly, any finality of the remand orders yields to "justice being done in view of all of the facts." Schultz, 24 F.3d at 630. The majority claims that the representations by plaintiffs' counsel on remand merely form a more "improved" and "complete" record, ante at 13, 14; this is an understatement, to put it lightly. In reality, the record on remand is starkly different than the record put forth prior to remand. Apples and oranges. Night and day. Although I agree that the district

56

court "'has one shot, right or wrong,' to decide whether a removed case should be remanded," ante at 11–12 (quoting Lowe, 102 F.3d at 735), this "one shot" must be based on an honest and candid (i.e., accurate) representation of the facts and record. Here, it was not, and the law provides a remedy to Colgate for such misconduct. See, e.g., Schultz, 24 F.3d at 632 (reversing denial of Rule 60(b)(3) motion for withholding key evidence); see Square Constr. Co., 657 F.2d at 68 (vacating denial of Rule 60(b)(3) motion and concluding that the district court's finding that evidence was not withheld was clearly erroneous).

For the reasons set forth above, I would vacate the denial of Colgate's Rule 60(b)(3) motion and remand the case for a hearing in federal court regarding whether subject matter jurisdiction over plaintiffs' claims against Colgate exists based on the facts as presented at the post-remand, state-court hearing on plaintiffs' motion for severance and consolidation.

## IV.

It is a truly sad day for this Court to claim that a party "failed" to make its case, ante at 13, and should be deprived of a forum to which it is entitled when its adversary concealed or otherwise obfuscated the information that would have allowed the party to do so. Under this disquieting logic, the majority would also claim that a person "fails" to compute the circumference of a circle when that person is not provided with

57

the circle's radius or diameter or the value of pi.  This simply cannot be the law, should not be the law, and is not the law.

Because the law is clear that remand does not deprive a court of jurisdiction to sanction a party pursuant to Rule 11, I would reverse the district court's denial of Colgate's Rule 11 motion.  And because it would have been an abuse of discretion to not sanction plaintiffs and their counsel, I would sanction plaintiffs and their counsel as set forth above in Part III.A. Furthermore, because vacatur of the remand orders does not require "review" of the merits of those orders, I would reverse the district court's denial of Colgate's Rule 60(b)(3) motion for lack of jurisdiction.  And because I think that Colgate has met the criteria to obtain relief under Rule 60(b)(3) and that it would have been an abuse of discretion to not grant relief to Colgate, I would vacate the remand orders and remand the cases with instructions as set forth above in Part III.B.

If honesty in the judicial system means anything, it means proceeding with candor before the tribunal, which plaintiffs' counsel did not do during the removal proceedings.  Whatever prolonging of this litigation vacatur of the remand orders might cause, Barlow and Mosko have only their own lawyers to blame. And the truth is well worth the delay.